OF

# THE DECISIONS

OF

# THE SUPREME COURT OF ALABAMA.

## JANUARY TERM, 1836.

DARRINGTON et al. *versus* BORLAND

POINTS INVOLVED IN THE DECISION OF THIS CAUSE.

*As to decrees in Chancery, where parties have not answered; or have not been served with process.*

*As to the service of process upon a personal representative, before decree.*

*As to decree, appointing guardian,* ad litem, *to defend.*

*As to the satisfaction of debts of a testator, out of his realty, in the possession of his heirs, irrespective of a charge of the debts, by will, upon the lands.*

*As to a charge of debts, by will, upon the realty, and, what words amount thereto.*

*As to the effect of a judgment against an executor, to charge heirs and devisees.*

*As to the effect of such judgment, upon the statute of non-claim.*

*As to the transfer of matters, by a Chancellor, to the master.*

3 v. P.                    2

*As to the construction of the act of* 1806, *subjecting lands of testator or intestate to payment of debts.*

*As to the effect of a devastavit, to defeat a charge, by will, of debts, upon the realty.*

*As to a certified copy of a will, as evidence of the validity of will and probate.*

*As to notice and terms of sale of lands, under a decree in Chancery.*

1. Where a bill is filed by a creditor, for the object of subjecting the lands of a testator, in the possession of heirs and devisees, to the payment of his debt; no decree can be rendered, until after service of process upon the personal representative, if within the jurisdiction of the court, or publication, if non-resident.

2. Nor can a decree be rendered, in such a case, against part of the defendants, before a decree *pro confesso*, as to every party, served with process, who has not answered.

3. It is essential to the action of a guardian, *ad litem*, to minors interested in a cause, that a decree should be had, appointing him such guardian: and, the answer of a stranger, styling himself so, is not sufficient to avoid the necessity of a decree, appointing him such.

4. Chancery will not entertain a bill, filed by a creditor, alleging a waste of the personal estate of a testator, by the executor, and seeking to subject the lands of the testator, in the possession of heirs and devisees, to the payment of his debt, (no charge of the debt being made by will, upon the realty,) except it be averred, and proved, that the executor and his sureties are insolvent; and, that all remedy, at law, has been exhausted against them.

5. But, in case of a charge, by will, of the debts of a testator, upon his realty, a trust is created, which it is the province of equity to enforce: and, in such case, there is no necessity, to allege or prove the actual pursuit of the remedies at law; or facts in excuse thereof.

6. In a proceeding, in Chancery, to subject the lands of a testator, in the possession of the heirs and devisees, to the payment of debts; a judgment obtained against the executor, is no evidence to charge the heirs and devisees.

7. But, such judgment would be sufficient evidence of a presentment of the demand, within the time prescribed by the statute of non-claim, if the demand were not otherwise liable to that objection.

DARRINGTON et al. *vs.* BORLAND.

8. But, it is competent, for the Chancellor, to transfer to them aster, the duty of receiving proofs of the debts of the testator; but such proof must be established according to the rules of evidence, and all parties in interest must have an opportunity, to appear and contest the proofs offered.

9. And, it seems, that on such reference to the master, the statute of limitations; or, that of non-claim, may be well urged, against any demand submitted to him.

10. Where, in such case, the order of reference is to the master, *to report the proofs*, questions, as to their sufficiency, are open.

11. But, where the order requires the master, *to ascertain and report* the debts, the report is to be taken as true, unless exceptions be taken before the master.

12. Where the will of a testator, after expressing an intention of disposing of *all his earthly estate*, recited, *that his just debts should be paid, previous to any distribution of the estate among the representatives*—held, that the will was entitled to a construction, charging the debts of the testator upon his realty.

13. The effect of the act of 1806, subjecting the lands of a deceased testator or intestate, to the payment of his debts; destroys all distinction between a general express trust, created by will, (or an implied general trust in the devisees;) and a special trust, designating by schedule, the particular debts of the deceased.

14. *Semble*—the just construction of this statute, is to make the lands of the testator, or intestate, liable to the debts, no matter how devised, or into whose possession passed; unless sold by a decree of the Orphans' Court, or of Chancery: or, unless where sold by a trustee, (authorised, either expressly or impliedly, by the will,) the sale is *bona fide*, and the proceeds are actually applied to the payment of the debts: which application the purchaser, or those claiming under him, must affirmatively show.

15. Under this statute, a decree cannot be rendered, for the rents and profits of lands, in the possession of the heirs or devisees: And, it seems, that where such debts, are charged by will upon the realty, no execution could go against the profits, until, after the sale of the lands, a deficit should be declared.

16. A testator may devise his realty, in such terms, as to subject it at all events, to the payment of his debts: and where a charge of the debts of a testator, upon his realty, is unconditional, a devastavit, by the executor, will not defeat it.

17. Under our statutes, a certified copy of a will and probate, is evidence both of the validity of the will, and of the correctness of the probate, while the decree of the Orphans' Court remains unreversed.

18. A reasonable notice in the sale of lands, under a decree of Chancery, (subjecting them to sale, for the payment of the debts of the testator,) is all that can be required; and such sale may be ordered, in the discretion of the Chancellor, for cash, or on credit.

This was a bill in Chancery, filed in Monroe Circuit Court, by Abraham Borland, against Zeno Philips, Wray Philips, Reuben Saffold, and Mary, his wife, John C. Philips, Sidney Philips, Francis H. Philips, Amarinth Philips, Elizabeth Harrison, Joseph King, John Darrington, James D. Godbold, and Joel E. Cannon, heirs, and devisees, and parties in interest, in the estate of Joseph Philips, deceased.

The object of the bill, was to subject certain of the lands of the testator, in the possession of the defendants, to the payment of a debt due by the said Joseph Philips, to the complainant.

The bill set forth many facts and allegations, which it is not deemed essential, to a history of the cause, as determined, to notice. Those material to be shewn, were, that Joseph Philips, in his life-time, to wit, on the fourth day of November, 1818, made, and delivered to the complainant, for a valuable consideration, a certain promissory note, for the sum of five thousand dollars; that, in 1820, or 1821, the said Joseph Philips departed this life, possessed of a large real and personal estate—of the probable value of twenty or thirty thousand dollars; that said Philips executed his last will and testament, which was in the words following, that is to say:

"In the name of God, Amen! I, Joseph Philips, of the County of Clarke, and State of Alabama, being sick of body, but of sound mind, and of disposing memory; and, calling to mind the uncertainty of human affairs, and being desirous to dispose of all

such earthly estate, as it has pleased God to bless me with—I give and bequeath the same, in manner following, viz: 1st. I will, that all my just debts should be paid, previous to any distribution of my estate between my legal representatives, except so much as may be necessary for the support and education of my children. 2dly. Having already provided for my two daughters, Elizabeth Harrison and Mary Saffold, as liberally as I feel myself able and willing to do, I therefore give and bequeath to each of them, one dollar. 3dly. I give and bequeath all my estate, both real and personal, to be equally divided between my other children, viz: four sons, Zeno, Wray, John C., and Sidney; and two daughters, Frances H., and Amarinth. 4thly. I ordain and appoint Reuben Saffold, Esq. and my two sons, Zeno and Wray, executors of this, my last will and testament." Witness, &c.

That, Zeno Philips, son of the testator, qualified, and gave bond, with sureties, who had become insolvent: that, after the decease of Joseph Philips, and the qualification of Zeno Philips, to wit, on the 12th day of February, 1822, the complainant commenced an action, at law, upon the aforesaid promissory note, upon which he subsequently recovered judgment: that, pending the said suit, at law, upon the said note, and from the death of Joseph Philips, up to the time of the rendition of the said judgment, Zeno Philips had continued in possession of the unimproved lands of said estate; and, of the personal property generally: that judgments at law, had been rendered against said Zeno Philips, as executor, in favor of the Tombeckbee bank; and that, in addition thereto, the said Zeno Philips had confessed a judgment

in favor of one King—all with a view, as was alleged, to defraud the complainant. That, the said Zeno Philips, and the said King, had concerted together, for the purpose of effecting a sale of the personal estate of the said Joseph Philips, at an under value; whereby the same was retained in the possession of Zeno Philips: that, Zeno Philips had given to Godbold, the then sheriff of Monroe county, a negro, belonging to the estate, in payment of his fees; and that this act was in fraud of the rights of the complainant, as a creditor of the estate.

The bill further alleged, that the said Zeno Philips had fraudulently represented the estate of Joseph Philips, insolvent; and had taken off the property of the estate beyond the limits of the State of Alabama. That Joseph Philips died possessed of many large and valuable tracts of land, which were described, at length; and, that he held, in his lifetime, many certificates of purchase, on which, portions of the purchase money had been paid; and, upon some of which, patents were afterwards granted, by the United States, to the heirs of Joseph Philips.

The bill, after setting forth many allegations, respecting the sales, relinquishments and transfers, of certain of the lands of Joseph Philips, and, charging Darrington, together with King, and Wray and Zeno Philips, with a fraudulent participation therein; contained a special prayer, for relief—seeking a sale of the estate, in satisfaction of the debt.

The record disclosed the service of subpœna on Saffold, Wray Philips, Elizabeth Harrison, Godbold, King, Darrington, Frances H. Philips, and Amarinth Philips.

DARRINGTON et al. vs. BORLAND.

Saffold, by his answer, admitted the death, the will, and the debt due the complainant, to an amount unknown to the defendant—denied any participation in the acts of the executor, or the receipt of any property from the said Zeno Philips, except a portion which had come *bona fide*, into the possession of the defendant, and for valuable consideration—admitted the possession of lands, held under certificates, by the executor, one fourth of the purchase money on which, only, had been paid; and, which the executor had determined to relinquish; but, that the value thereof, had been accounted for to the estate, in disbursements, made by the defendant, for the minor heirs of said Joseph Philips.

Darrington, in his answer, alleged, that at the time he purchased lands of the said Zeno Philips, he did not know, that the estate of the said Joseph Philips was insolvent—admitted, having bought certain lands of the executor, for fair and valuable consideration; the right to sell which, the said Zeno informed him, he derived under a special statute; and, which information was confirmed by counsel, whom the defendant consulted on the subject—denied all combination and fraud, and all knowledge, as to the claim of the complainant.

The answer of Elizabeth Harrison, submitted a demurrer—denied all combination; and all interest, as a devisee.

The answer of King, averred the indebtedness of the estate of Joseph Philips, to a firm, with which he was connected—contended, that the confession of judgment, by the executor, Zeno Philips, was fair and *bona fide;* and intended to put the defendant on an equal footing with the other creditors of the es-

tate: his answer further explained his transactions with the executor; and denied all and every fraudulent combination.

Samuel M'Coll, guardian, *ad litem*, for the minor heirs of Joseph Philips, answered, generally; denying the allegations of the bill, and insisting on proof.

It did not appear, from any part of the record, that any decree had been made, appointing a guardian *ad litem*, for the minor heirs.

After an interlocutory decree, requiring the master to ascertain and report the debts due by the said Joseph Philips; and, after many voluminous references to, and report and accounts, stated by the master, a final decree was rendered upon the bill, answers, and master's report.

The final decree, after reciting, that it appeared, from the master's report, that no creditors had filed claims against the estate of the said Joseph Philips; and, that there was due to the complainant, seven thousand four hundred and eighty-three dollars and thirty-three cents, with interest thereon, making the aggregate sum of twelve thousand six hundred and thirty-eight dollars and forty-three cents; and that there was no personal estate, out of which to discharge the same : and, further, that the said Joseph Philips died, possessed of divers tracts of land, purchased by the said deceased, and finally paid out, with the assets of the testator ; and, in part, conveyed, by the executor, to John Darrington, Elizabeth Harrison, and, in part, patented to certain of the heirs of said Joseph Philips—then it was ordered, adjudged and decreed, that the said lands, (all which were described,) should be sold, to satisfy the complainant's demand; or so much as might be neces-

sary—authorising the master to effect a sale, on thirty days' notice; and to make titles. Also, that Darrington should pay fifteen hundred and thirty-one dollars, and twenty-five cents, to the master, for the use of the complainant, being the rents and profits of certain land, held by him, under the executor.— The decree further dismissed the bill, as to Saffold and wife, King, Cannon and Godbold.

The case having been brought into this Court, by writ of error, the following assignments were made, and insisted on, for a reversal of the cause.

First. That the court erred in rendering a decree for the complainant, the bill containing no equity upon its face.

Second. In proceeding to render a decree, without proper steps having been taken to bring Zeno Philips before the court.

Third. In rendering a decree, without having appointed a proper guardian, *ad litem,* for the infant defendants.

Fourth. In proceeding to render a decree, without the cause having been regularly set, for hearing.

Fifth. In rendering a decree, without a judgment, *pro confesso,* having been taken against such of the defendants, as had not answered.

Sixth. In rendering the interlocutory decree.

Seventh. In confirming the report of the master.

Eighth. In overruling the exceptions, filed to the master's report.

Ninth. In overruling the motions, to dismiss the bill.

Tenth. In rendering a decree for the complainant, without evidence taken in the cause, to support

3 v. P.            3

the allegations of the bill; and to disprove those of the answer.

Eleventh. In rendering a decree for the complainant, without sufficient and legal proof, that any debt was due to the complainant; or,. that it was duly presented to the executor; and, within proper time.

Twelfth. In rendering a decree, without it having been shewn, that the complainant had pursued all remedy, at law, unsuccessfully ; or proper excuse for the omission.

Thirteenth. In decreeing a sale of the realty without having first taken an account of the personalty.

Fourteenth. In decreeing a sale of the realty, without an account of the value of the real estate, which had heen applied to the payment of the debts; and, of the rents and profits thereof.

Fifteenth. In decreeing a sale of lands claimed by Darrington, one of the defendants.

Sixteenth. In decreeing a sale of lands claimed by Elizabeth Harrison.

Seventeenth. In decreeing a sale of the lands, patented to the heirs of Joseph Philips.

Eighteenth. In rendering a decree against Darrington, for the rents and profits of the lands held by him.

Nineteenth. In decreeing a sale of the lands, for cash.

Twentieth. In decreeing a sale of the lands, on thirty days' notice.

The case was argued by *Mr. Hopkins* and *Mr. Stewart*, for the plaintiffs in error ; and by *Mr. Cooper*, for the defendant.

THORNTON, J.—This is a writ of error, brought by the plaintiffs, to reverse a decree in Chancery, rendered against them, in the Monroe Circuit Court. The bill of complaint contains multifarious charges, which are substantially embraced in the following statement:

That the complainant was a creditor of Joseph Philips, deceased, upon an account, which is set forth at large in the bill. That the said Philips died, on the —— day of ————, having made a last will and testament, an authenticated copy of which, with the certificate of probate, is made an exhibit, in the following words:

"In the name of God, Amen! I, Joseph Philips, of the County of Clarke, and State of Alabama, being sick of body, but of sound mind, and of disposing memory; and, calling to mind the uncertainty of human affairs, and being desirous to dispose of all such earthly estate, as it has pleased God to bless me with—I give and bequeath the same, in manner following, viz: 1st. I will, that all my just debt should be paid, previous to any distribution of my estate between my legal representatives, except so much as may be necessary for the support and education of my children. 2dly. Having already provided for my two daughters, Elizabeth Harrison and Mary Saffold, as liberally as I feel myself able and willing to do, I therefore give and bequeath to each of them, one dollar. 3dly. I give and bequeath all my estate, both real and personal, to be equally divided between my other children, viz: four sons, Zeno, Wray, John C., and Sidney; and two daughters, Frances H., and Amarinth. 4thly. I ordain

and appoint Reuben Saffold, Esq. and my two sons, Zeno and Wray, executors of this, my last will and testament." Witness, &c.

That letters testamentary were granted to Zeno Philips, alone, who is alleged, in the bill, to be a citizen of the County of Monroe; against whom, suit was instituted, by the complainant, on the demand aforesaid, on the 12th day of February, 1822, in the Circuit Court of said County; and a judgment obtained therein. That a large portion of the personal estate of the deceased testator, was wasted and embezzled, by the said Zeno; and, that, owing to the fraudulent conduct of the said Zeno, and others, charged with participation in the devastavit of the assets, none can be found, to satisfy his demand.

The bill, also charges, that the said Joseph died, seized of a large landed estate, which consisted of certificates of purchase from the United States; and that, without any order of sale from the Orphans' Court, or any other authority to do so, the said Zeno fraudulently transferred the same to various persons; and, among others, to the plaintiffs in error. That, patents have been obtained from the government, in many instances, to the heirs, generally, of the said Joseph, for sundry tracts of land, paid for, by the said certificates.

The bill prays for a discovery, in regard to the premises, and that the lands of the deceased may be subjected to the payment of the debt of the complainant.

Of the defendants, against whom the decree was pronounced, who are the plaintiffs in error, and in relation to whom, it is alone, proper, now, to consider this cause, Darrington answered, denying all the

allegations of fraud with which he is charged—admitting, that he purchased from his co-defendant, Zeno, sundry certificates of purchase, of the estate of the deceased testator; but, he insists, that he purchased in good faith, for an adequate consideration—relying, as he avers, upon the competency of Zeno, to transfer them, by virtue of an act of the legislature of 1821, authorising the executor of Joseph Philips, to sell and transfer certain certificates of land, therein named.

Mrs. Harrison, by her answer, admits the purchase, made by her, from Zeno—disclaims any interest, as heir, or devisee, under the will of her father—insists, that she is a *bona fide* purchaser, for valuble consideration; and, relies, also, upon the act of 1821, as conferring the power to sell upon the acting executor of her father.

The four minor defendants, as they would appear to be, answer, by Samuel M'Coll, who, by no order or decree of the Court, disclosed in the record, was appointed their gaurdian, *ad litem;* though the answer purports to be in virtue of such appointment.

Zeno Philips does not appear, from the record, to have been served with a subpœna. No answer is filed by him: no judgment, *pro confesso*, taken against him—nor any means used, to make him a party to the cause, so as to render him liable to the decree.

Wray Philips did not answer; nor does it appear that a judgment, *pro confesso*, was taken against him.

In this stage and state of the case, an interlocutory decree was rendered, ordering notice to be given to all the creditors, to come forward, and prove their claims—an account to be taken, of the debts due from the estate of the deceased testator—an account

DARRINGTON et al. *vs.* BORLAND.

of the personal estate, if any, of the said estate; and, of the location, quantity, and yearly rent, or value of the real estate, &c.

By the final decree, the bill was dismissed, as to Saffold and wife, Butler and King, Cannon and Godbold; and certain lands, therein specified, decreed to be sold, in satisfaction of the complainant's debt: as, also, the sum of ——dollars, to be paid by Darrington, being the rents and profits of portions of the real estate, while in his possession, as reported by the master.

The record does not shew, that there was any other evidence; but, that the cause was heard, upon the bill, answers and master's report.

From this brief history of the case, it is apparent, that many irregularities have intervened—for which the propriety of the decree may be justly assailed. In the first place, in whatever light the case may be viewed, the personal representative of the deceased, is an essential party; and no decree could regularly be pronounced against the other defendants to the bill, until, by service of process upon him, if he be alive, and within the jurisdiction of the court (which facts, the bill, in this case, expressly avers,) or, if non-resident, by publication, according to the statute, he had been notified of the proceeding—or, had, voluntarily, answered the complaint. Even in the case of an express lien, by mortgage of realty, if the mortgagee seek a sale of the lands, he must make the personal representative of the deceased mortgagor, as well as his heir or devisee, a party to his bill.[a]

As the personal property, in every case, unless where the testator unequivocally exonerates it, by the provision of other means, is primarily and natu-

a2Br. Cha. 155

DARRINGTON et al. *vs.* BORLAND.

rally applicable to the payment of his debts, the personal representative, who, alone, is cognizant of it, ought to be a party, wherever any account of it is taken. In all cases, too, he is the proper person to pay the debts.—They are required, within a certain time, to be presented to him ; and, he may have paid them, without the knowledge of the heir or devisee.

Of the same nature with this omission to make the executor a party, is the failure to take the bill, *pro confesso,* against Wray Philips; as, also, the absence of any decree, appointing a guardian, *ad litem,* for the minor devisees. The answer, by Samuel M'-Coll, styling himself their guardian, is not sufficient.[a]

[a] 1 Monroe, 72; 3 Bibb, 525

For irregularities, of the description above noticed, it is the practice of appellate courts, to reverse and remand the cause, if there be equity in the bill; and if upon the whole record, the complainant would otherwise be entitled to the relief which he seeks.—It becomes our duty, then, to proceed to the investigation of the essential merits of the cause.

The view, which we are now called upon, to take of it, is greatly restricted, compared with that presented, by the record, to the Court below. The decree, which is only appealed from, by those of the original defendants, against whom the bill was not dismissed, is not, now, sought to be disturbed; except so far as it affects their interests in the real estate of Joseph Philips, deceased, which they hold, as his devisees, or by contract of purchase, with Zeno Philips, who was executor of the will, and also one of the said devisees.

Various errors are assigned upon this record, and a multitude of points have been urged, in the argu-

ment, on both sides, with a zeal and ability worthy
of the gentlemen who conducted it. It is the duty
of counsel, to urge every matter, which may even,
probably affect the determination of a cause. But,
as regards the court, though all should be heard
with respectful attention, yet, perhaps their duty is
best observed by adjudicating only such as are ne-
cessarily involved in the decision. I will endeavor
to embrace all such, in the view which I propose to
take of the case, under two heads : first, as the case of
a 'creditor seeking satisfaction of a debt, out of the
real estate of a deceased debtor, irrespective of any
charge of his debts, by will, upon his realty ; and, se-
condly, as that of a creditor seeking to subject the
same, under a charge in the will

As a preliminary matter, applicable, alike, in ei-
ther of those aspects of the cause, it may be best,
here, to consider the character of certificates of pur-
chase of land, from the general government : how
far, and under what circumstances, they constitute
real estate. There can be no doubt, that these terms
embrace lands held in this manner, just as in a simi-
lar case of purchase from an individual, though the
purchase money were not all paid, or deed executed to
the vendee. In the use of the terms, by the testator,
in this case, nothing else could have been intended —
for, it appears, that he had no other real estate, than
of this kind. I apprehend, too, that whenever any
such certificates have been rendered available towards
the clearing out, or paying for any tract or parcel of land,
by an appropriation under the act of congress, authoris-
ing their translation, such tract or parcel of land con-
tinues subject to the creditors, as the real estate of
the testator or intestate, who died possessed of them,

exactly in the proportion of the certificates thus applied. The facts, that the transfer of such certificates, has been made, for valuable consideration, in the form prescribed; and that patents have been obtained for the lands, to which they have been applied, by the transferees, will not vary the case.

The position, that a patent obtained under such circumstances, is a shield to the purchaser, is not tenable. The principle of equity, that he who unites the legal, with an equitable title, must prevail against one having a bare equity, is not applicable. The maxim, *caveat emptor* applies with all its force.— The law in favor of creditors, is a monumented index, warning every one to beware, who is about to purchase the real estate of a deceased; and, if he purchase, the land remains encumbered with the liability, just as though a regular mortgage were spread upon the records of the country.

In connection with these preliminary suggestions, which are, indeed, but the anticipated results of considerations, intended to be more fully exposed, I will here remark, in relation to the act of 1821, entitled " An act to authorise the executor of Joseph Philips, deceased, to sell and transfer certain certificates of land, therein named," that so far as this record discloses, no title has been acquired, in virtue of that act—for, (waiving all other objections,) with regard to this mode of sale, as of any other, of the real estate of a deceased, upon well established principles, it is incumbent on him, who relies upon it, to shew, affirmatively, that all the prerequisites, which are so many guards, interposed for the safety of the creditor, like conditions precedent to any title, have been strictly complied with.[a] [a4 Wheat. 77]

3 v. P.                    4

Having premised thus far, I will proceed to consider the case, in the order above stated.

From the nature of the debt sought to be satisfied, it being, as set forth in the bill, a promissory note—upon the principles of the common law, there is no recourse of any kind, upon the real property of the deceased, for its discharge; except so far as, by his will, it may have been charged upon the realty. By that law, real estate was only subjected, in the hands of the heir, where he was bound, *eo nomine*, in the obligation of the ancestor. If it were aliened, before any suit brought, it was discharged in the hands of the vendee of the heir; and, when devised, there was no recourse, whatever, against the lands, in the hands of the devisee.

As early as the year 1806, these features of the common law, were all abolished. By an act of that year,[a] after providing, "that the goods and chattels, or personal estate of any person, deceased, whether testator or intestate, shall stand chargeable with the payment of all the just debts, and funeral expenses of the deceased, and the charges of settling the said estate:" it was further enacted, "that the lands, tenements and hereditaments of the testator or intestate, shall stand chargeable with all the debts of the deceased, over and above what the personal estate shall be sufficient to pay, as aforesaid." By that act, all distinction, between debts by simple contract, and by specialty, is destroyed. All the creditors of the deceased debtor are entitled, in the event specified, of an insufficiency of the personal property, to be satisfied, out of the real—whether in the hands of the heir, or of the devisee of the deceased debtor; or, even, of the *bona fide* alienees of either.

[a] Aik. Dig. 151

DARRINGTON et al. *vs.* BORLAND.

By the same act above recited, the executor or administrator is empowered, where the real and personal estate are both, together, shewn by him, to the satisfaction of the Orphans' Court, to be insufficient to pay all the debts of the deceased, to sell the real estate, by order of that Court, and divide the proceeds, *pro rata,* among the creditors.

By a subsequent act, passed in 1822,[a] it is enacted that it shall be lawful, for an executor or administrator, who has not power, by the will, to sell real property, to file a petition in the County Court, setting forth, that the personal estate of his testator, or intestate, is not sufficient for the payment of the just debts, &c.; and, according to the rules prescribed by the said act, a sale will be decreed to be effected, by commissioners appointed for that purpose.

These laws give the extent of the liability of the lands of a deceased debtor, to his creditor, and are all, which, at the time of the filing of this bill, pointed out any mode by which they could be reached.— It is apparent to my mind, that the remedies for obtaining the right conferred by the first act, are not conclusively limited to those pointed out by it, and the latter one of 1822.

The first of these acts only allowed the sale of real property, where there was a total insolvency, or insufficiency of both real and personal estate; making no provision for the case, where there was not an insolvency; but, where, though the personalty, alone, could not meet the demands of creditors, yet, a portion only of the realty would be requisite for that purpose. The last act removed that defect in the former; but, still did not provide a sufficient re-

a Aik. Dig. 180

medy : for, in case of the failure of the executor or administrator, to apply for the sale of the real property, when needed, there would be no redress; and the benefit conferred by the act of 1806, subjecting the lands of the deceased, would utterly fail.

It is true, that by express legislation, subsequent to the passage of the above cited acts, and, also, since the filing of this bill, the failure of the executor or administrator, to apply for the sale of the real estate, within three months after declaring the estate insolvent, has been declared a devastavit; and, though it may be doubted, whether in every case, and without such a statute, the failure to apply for its sale, when needed, to pay debts, would not be a waste—yet the doubt, as to the existence of the legal remedy, as for such waste, against the personal representative, and his securities, would, of itself, authorise an appeal to the Chancellor. I cannot hesitate to conclude, that the Chancellor should, as the law then stood, decree a sale of the real property of a deceased, where, after a full and fair administration of the personal estate, there remained debts unpaid, and the personal representative had failed to apply for its sale.

Now, upon what principle of jurisdiction is it, that a Chancellor would proceed, in such a case? It cannot be merely on the ground, that the land is liable for the payment of the debts. That fact, alone, would not confer jurisdiction, though without such liabilty, no jurisdiction could be entertained—for, without our statute, equity, no more than a court of law, could reach the real estate of a deceased, to satisfy a simple contract creditor; unless, through a charge upon it by will—or, where it was sought to marshal

the assets—the specialty creditors, having, as they were authorised to do, exhausted the personal estate.

It is, I apprehend, upon this principle, that no legal means are available to the creditor, to satisfy a just debt; and from the necessity of the case, he must be entertained in a Court of Chancery, to reach the real estate, or there is a failure of justice. There is not any liability, at law, against any person, for his demand; and, if the estate had been regularly declared insolvent, no suit could be sustained, unless, at the option of the executor or administrator. It is only, as I apprehend, by the application of the same principle, that is, to save a failure of justice, that a Chancellor would lend his aid, where the realty remained unsold by the personal representative, and all the personal estate had been appropriated to his own use. The injury, in such a case, is a direct consequence of the devastavit; and, unless that injury is remediless at law, the Chancellor will not interpose.

There is, however, a legal remedy against the executor or administrator, and the securities for the administration, and unless it appear that the common law forum has been invoked in vain; or that from the insolvency of these parties their pursuit would be idle, there is no ground for the application to chancery. To give jurisdiction, such should be the allegations of a complainant; and to warrant a decree, such should be the effect of the proof. There being no such proof in the case before us, which is one of waste and mismanagement by the executor, as set forth in the bill, I do not think the decree can be sustained, in the first aspect of the cause.

In Virginia, where the distinction between simple contract and specialty creditors has not been abolished, it is held that real property, in the hands of heirs or devisees, was not subject to creditors, in a case, where, if there had been no waste by the personal representative, there could have been no doubt of the jurisdiction of the court. It was the case of a simple contract creditor who had obtained a judgment against the executor by default, and then *filed* his bill to marshall the assets, averring that the personal property had all been exhausted by the payment of specialty creditors. The court held, that the judgment was an admission of assets, that therefore there was a remedy at law against the executor and his securities, and whilst that was the case, equity would not relieve.[a] In the case before us, there is not only a judgment at law against the executor, but positive averment of a devastavit. In the Circuit Court of the United States for the State of Rhode Island, Judge Story recognizes the same doctrine, in third Mason, 126. That was a bill in equity, brought by the United States against D. T. Aborn, the sole acting executor of Samuel Aborn, deceased, against the securities of the executor, on his probate bond, against the heirs and devisees of the testator, and against one Edward Carrington, to whom D. T. Aborn had assigned all his estate. The bill charged that D. T. Aborn was insolvent, and had wasted the personal estate of the testator. All these parties being before the court, the securities of the executor in the probate bond, were decreed to pay the debt, and the bill dismissed as to the rest of them. The Judge, in delivering his opinion, says, "I pass over the questions how far devisees, &c. taking the real es-

[a] 1 Munf. 436.

tate, (which, in this State, is assets for the payment of debts,) ought, in a court of equity, to be held liable to pay debts like the present, upon a deficiency of assets, occasioned by the waste or mismanagement of the executor; and how far an assignee, (such as Carrington is asserted to be in the bill,) bound by an undertaking to discharge such debts upon execution of the assignment, may be made liable here, as upon a trust. The former could only arise where the sureties of the probate bond, were also insolvent, which is not the present case.    The latter does not arise upon the facts," &c.

I consider the doctrine to be here explicitly announced, that the establishment of the insolvency of the securities of an executor whose mismanagement has occasioned an insufficieucy of the personal estate to pay creditors, is a prerequisite to the liability of heirs or devisees, if they be in such case liable at all; as to which latter proposition concerning their liability in such case, I deem it unnecessary to express any opinion.

In the second aspect, in which it remains to consider this cause, that is, as one in which the aid of chancery is sought to reach the real estate of a debtor, by virtue of a charge of his debts, by his will, upon that estate, the jurisdiction of the court rests upon a principle altogether different from that which we have been examining.    It is the familiar, inherent and original case of a trust, which it is the peculiar province of this court specifically to enforce.— There is no necessity here, to aver, and prove the fruitless pursuit of legal remedies, or facts which exonerate from that pursuit, by shewing it to be worse than an idle waste of time and costs.    If the charac-

ter of a creditor is sustained, and a will creating a charge from which a trust results, is proven, the court will fasten upon the subject of that trust, and see to its proper administration. The first enquiry presented in the view we are now taking, is, whether, by the will, as set forth, there is a charge of the debts upon the real estate of the testator. I cannot hesitate in concluding that there is. After expressing the desire to dispose, by his will, of all his *earthly estate*, which *ex vi terminis*, includes both real and personal, the testator thus proceeds—

" I give and bequeath the same, in manner following, viz: 1st. I will, that all my just debts should be paid, previous to any distribution of my estate between my legal representatives, except so much as may be necessary for the support and education of my children ;" and, by a subsequent clause, he " bequeaths all his estate, both real and personal, to be equally divided," between the six devisees, named in the will, as above copied. There is no devise to the executors, of the real estate, to sell for the payment of the debts; nor is there any power conferred upon them to do so. The real estate, by this will, as I apprehend it, vests, in *solido*, in the several devisees, charged with the payment of the debts.

If no strength were derived to the construction, from the grammatical connection, which would refer the word " estate," where it occurs, in the first clause, after the videlicit to the word " same;" which is again referable to " earthly estate," in the introductory clause—yet the first clause, itself, following the videlicit, would, without any such aid, be satisfactory to my mind, of the intention, to charge

the real property.   Nor is this conclusion weakened, by the suggestion, that the words, " my estate," ought to be limited, and controlled by the words "distribution" and " legal representatives," which occur in the same clause.   It is true, that the term distribution, is most commonly applied to personalty, and that legal representatives more commonly mean the executors and administrators of a deceased, than those between whom his estate is to be divided.   However, the sense of those terms, which we here impute to the testator, is sanctioned by our legislative use of them, as in Aikin's Digest, p. 155, sec. 12.

The real property, then, of the testator, is, by the will, vested in the devisees, charged with the payment of his debts, and, by necessary implication, they are trustees of the creditors.   From this view of the case, so far as the mere question of jurisdiction is concerned, no difficulty can arise.   But when we proceed to carry out the trust, the principles which ought to be applied are not so obvious.

The effect of our act of 1806, subjecting the lands of a deceased, whether testator or intestate, to the payment of his debts, destroys all distinction between a general express trust, created by will, or an implied general trust, in the devisees, (as is created by this will in favor of the creditors,) and a special trust designating by schedule, the particular debts of the deceased.   I apprehend that the just construction of this act, is to make the lands liable, no matter how devised, or into whose hands they may pass; unless sold by a decree of the Orphans' Court, or of Chancery; or, unless, when sold by a trustee, authorised either expressly or impliedly, by the will, the sale is *bona fide,* and the proceeds actually applied to the

3 v. P.                    5

DARRINGTON et al. *vs.* BORLAND.

discharge of the debts : which application it is incumbent upon the purchaser, or those claiming through him, affirmatively to shew. It creates a specific lien, overreaching all conveyances through the will of the debtor. As, between his heirs and devisees, he may do what he pleases with his estate; he may set apart a particular portion for the payment of his debts, to the exoneration of the balance : he may direct his executor, or any other trustee, *to sell* a specified portion of his estate, for the payment of his debts. But all this must be subordinated to the rights of creditors. The will of a deceased will be carried into effect whenever it can, without impugning their rights. So, if a portion of the estate is authorised to be applied to other purposes than the payment of debts, and such application has been made, that portion will not be disturbed unless there should be a deficit of the balance, to pay the debts.

This modification of the doctrine of trusts, which is, in effect, giving a paramount right to the lien of creditors, upon the estates of deceased debtors, over any purchaser from a trustee, created by the will, unless the purchase money has been actually paid to creditors, seems to me to be the necessary result of the construction which is due to the act of 1806, above cited.[a]

In the aspect in which we are now considering this case, as in the other, the question arises, how far the waste of the personalty, which is the primary and natural fund for the payment of debts, will exonerate the lands charged by the will. I will here remark, that, although the testator cannot abridge the rights of the creditors, he may enlarge them beyond the extent to which they might otherwise attain, and,

[a]See 1Dal. 481—4 Ib. 119—5Mas 240—6 Ib. 149.

whatever may be the proper construction of our laws, subjecting the lands of a deceased to the payment of his debts, in this particular, it is certainly competent for him to devise them in such terms as to subject them at all events, and under all circumstances.—The question is one of construction, and in the will now before us, the language is very comprehensive. The testator desires his debts to be paid, " previous to any distribution of his estate between his legal representatives." Could this desire be said to be accomplished, if the devisees, or their vendees, were allowed to enjoy the estate, free from liability, whilst the debts remained unpaid? The language is, not that he decrees the debts to be paid out of his real estate, on condition that his executors do not waste his personalty. It is an unconditional subjection; and, upon principle, a lien once created, continues until discharged by the payment of the debt; unless forfeited by some act on the part of him in whose favor it is created.[a] When the charge is unconditional, by the terms of the devise, the devastavit will not defeat it.[b]

[a] 12 Wheat. 177.

[b] 3 Cranch 249.

From the consideration thus far given of this case, it is deducible, that the real estate sought to be subjected by the bill, is to the extent, and in the manner heretofore explained, liable to the debts of the deceased testator, if not by force of the statute, at all events by virtue of the charge upon it by his will; that the court has jurisdiction of the cause, and that the allegations in the bill are sufficient. To warrant a decree for relief, however, there must not only concur jurisdiction in the court of the subject matter, and appropriate allegations; but they must be sustained by competent proofs: with regard to which,

though the rules of evidence are the same, both at law and in equity, yet the mode of ascertaining facts is one of the characteristic distinctions of the latter tribunal. The conviction of the truth of facts may be derived to the mind of a Chanceller through various channels.

The answer of the defendant, containing an express admission of the fact, is proof of it, whether such fact is charged to be within his knowledge, or not. So, if a matter is charged, to be in the knowledge of a defendant—or, if it be apparent, that he must be cognizant of it, if true, whether he be charged with such knowledge or not, his failure to deny it, is tantamount to an admission; upon the common sense rule, applicable in such case, that silence gives consent. So, too, it is competent to a Chancellor, to tranfer the ascertainment of complicated matters, especially of account, by reference, either upon a feigned issue, to a jury at law, or to a master, or auditors or commissioners, (for they are so styled, indifferently,) of his own appointment. The facts thus ascertained by the verdict or report, as the result of evidence, taken and heard before the jury or master, are not to be proven over again; nor is the evidence, upon which they were found, before the Court, unless brought thither, by objections, made in the tribunal where it was adduced—or, unless the order of reference, to the master, direct him, (otherwise, it would be a departure from the order,) to report the proofs back to the Court.

I have already remarked, that two essential matters of fact, necessary to sustain the decree in the first aspect of this case, viz. the insolvency of the executor, and of his securities, in no manner, are proved in this record; and, if there were no other

ground, for the case to rest upon, the decree would, for these substantial defects, in the proof, be reversed, and the bill be here dismissed.

The other aspect, however, which the bill presents, makes it necessary to examine further, as to the proof of the will, and of the debt.

As to the will, it is neither charged to be, nor is it, in presumption, at law, to be considered, as peculiarly in the knowledge of the plaintiffs in error. That a will was made, might, perhaps, be so considered; but, that a legally attested will, such as is required, to pass real estate, was left by the deceased, is not to be presumed, as in the knowledge of the devisees, even, much less, of those of the defendants, who do not claim, in that character. Nor, is there any admission of such a will, in the answers of any of the present plaintiffs in error. The only evidence of it is a copy, with a certificate of its probate, by the clerk of the Orphans' Court. I have felt some difficulty, in determining, whether this will constitute sufficient proof. But, from a strict examination of our statutes, in force at the making and probate of this will,[a] it seems, that no other proof can be required, in any forum, or in any controversy, than such as is here offered. [a Toul. Dig. 883 to 888.]

And, this conclusion is fortified by analogy of the English doctrine, applicable to wills of personal property, of which, alone, the probate Courts, in that country, could take the proof;[b] and, by the decisions in those States, where, as with us, probate Courts are authorised to take proof of wills, both of real and personal estate.[c] [b Bul. N. P. 245, 246— 2 Salk. 553] [c 5 Lit. 275]

By the acts above referred to, jurisdiction is fully conferred, of the probate of all wills. Notice is re-

quired to be given to the next kindred; and a mode is pointed out, expressly for the correction of errors, in the procedure of the court.

By section 55, p. 887, the validity of the will, may be contested, by bill in Chancery, within five years after probate; but, if not within that period, the probate is declared to be conclusive and binding on all parties concerned, except, &c. And, also, by section 56, same page, the correctness of the decree of the Orphans' Court, admitting the will to probate, may be tested, by appeal, &c.; and, by section 15, p. 885, all original wills after probate, shall be recorded, and remain in the register's office of the court where they are proved—except, &c.

The effect of this legislation is, I think, to make the certified copy of the will and probate, evidence, both of the validity of the will, and of the correctness of its probate, so long as the decree of the Orphans' Court remains unreversed.

By analogy to the doctrine in England, respecting wills of personalty, I come to the same conclusion.— There, after probate the certified copy is full and sufficient evidence. We have extended the power of probate, so as to include wills of both kinds, and the effect of the extension follows as a consequence.

As to the proof of the debt, in this case, in determining upon its sufficiency, regard must be had to the settled practice in Chancery, above mentioned, of reference to the master. As was contended in argument, it is very true, that there is no privity between the executor, and the heirs or devisees of a testator; and, of course, that a judgment against the former, is no evidence, in a proceeding against the latter, to subject the real estate. They claim

through the will, or by descent, and not through
the executor; and if the exhibit of the judgment,
properly authenticated, had been read on the trial,
without further proof of the debt; and, no other
mode of ascertaining the fact of the debt, had been
adopted by the court, it might well be said, that
there was no evidence of it, upon the record.    But,
instead of that, the court, as it was competent to it
to do, and in conformity with the usual course, order-
ed an account to be taken before the master, and a
report to be made by him, of the debts due from the
testator—thus transferring the office of receiving the
proof, from himself to another competent tribunal.—
There, the matter of the original justness, and con-
tinuing obligation of the debt should have been met,
and controverted, by all the parties interested in re-
sisting it.    Even the statute of limitations might,
there, have been urged against the demand, if it were
liable to such objection.[a]                        [a] 4 Con. E.
                                                     Ch. 461.

According to my apprehension, the statute of non-
claim might, also, be there rejected : of which latter,
however, I will here remark, that a judgment against
the personal representative, is sufficient evidence, of
a legal presentment of the demand.    If the order of
reference, in this case, had been, as it was in the case
cited from 1 Munf. 438, that the master should *re-
port the proofs* adduced before him, questions, as to
the sufficiency of them, would, of course, be fairly
open.

But, where the order or decree is, as it was here,
to ascertain and report the debts, the report of the
master is received as true, where no exception is ta-
ken ;[b] and the evidence will not be looked to by the    [b] 11 Wheat.
                                                          127.
Court, nor need it be reported, "farther than it is re-

DARRINGTON et al. *vs.* BORLAND.

lied on to support, explain, or oppose, a particular exception." In this case, the only exception taken to the item of the debt in the report, is, that there was no such judgment as the report recites, against the executor, which was overruled by the Court below. This exception does not embrace the objection now urged, which is to the competency of such evidence to establish the debt against the present plaintiffs in error, even admitting such judgment to exist. In the Court of errors in New York,[a] *Spencer,* Justice, says, "it appears to me that exceptions partake of the nature of special demurrers; and if reports are erroneous, the party must put his finger on the error; when he does so, the parts not excepted to, are admitted to be correct, not only as regards the principles, but as relates to the evidence on which they are founded." As it does not appear that there was any objection taken before the master, to the competency of the proof on this head, or any exception filed to it in the Court below, I do not think that the question is now open. But, this whole report, upon other grounds already alluded to, abstracted from its inherent qualities, is insufficient, and should not have been adopted as the basis of the final decree. The interlocutory decree itself, ordering the action of the master, was premature. If the proof of matters essential to a decree, may be translated from the court to the tribunal of the master, still, these matters must be there established according to the rules of evidence, and all the parties interested must have the opportunity, so far as the law affords it, in any other case, to appear if they choose, and scan, and sift the testimony offered, as also to rebut it by any which they can adduce. As respects Zeno Philips, he

[a] 6 John. R. 591.

had not been served with the process, and as to the minors if they had any guardian *ad litem,* which I think they had not—yet the clerk and master answering as such, could not unite the incompatible character of judge and party.

The views presented in the foregoing pages, embrace, I believe, every matter presented by the assignment of errors, except three particulars in the final decree, which relate to the rents and profits—the sale of the lands for money, or cash, and not upon a credit—and upon the notice of only thirty days.

As to the rents and profits, in the first aspect heretofore taken of this case, I would not hesitate to pronounce, that a decree for any portion of them, would be erroneous. Chancery, in supplying a remedy, would not go beyond the extent of the right conferred upon the party, by the law; and this right, according to my construction of the statute, is only to subject the land, itself, of a deceased debtor. The rents and profits accruing, before the creditor avails himself of the proceeds, by a sale, belong to the heirs or devisees. Under the act, alone, they stand in the attitude of mortgagors, who are not responsible for the rents and profits. This is the construction given to a similar act, in Massachusetts;[a] and I concur in *its* propriety. [a]16Mass.R 280

In the case, however, of a charge of the debts, by the will of the testator, upon his lands, the authorities are, that the rents and profits are to be accounted for.[b] But, in such case, where the direction is not expressly, or by strong implication, to pay the debts, out of the rents and profits; but merely, as here, a charge upon the lands, themselves—as in the [b]3P.Wms. 358—1Atk 421—8Ves 308

3 v. P. 6

case, above cited from 3 P. Wms. they are postponed, in the order of application, to the proceeds of the sale of the land.

The decree is erroneous, in this particular; no execution should go for their amount, until, after sale of the lands—a deficit should still be left.

I do not perceive the force of the objection, to either of the other particulars mentioned. It is true, that, in the sale of lands, under the act of the legislature, authorising executors and administrators to sell, for the payment of debts, upon the insufficiency of the personal estate, the Court may direct the sale to be either for money, or on a credit, as may be most just and equitable. It would seem to me, that it would be just and equitable, in every case, if the debts were all ascertained—at all events, if judgments were obtained—that the creditors should not be delayed, by a sale on credit, which might possibly result in a total loss, by the insolvency of the purchaser, or, in another suit, on the bonds for the purchase money; or, in case of the death of the obligors, in the same protracted routine of pursuit.— There is no reason for more delay, in the satisfaction of a decree in Chancery, than of a common law judgment. A reasonable notice of the time of sale, is all that should be required ; and, I think, that, in adopting the regulations of the act, subjecting lands to the satisfaction of judgments and decrees, against living debtors, as was done in this case, there was no error.

Let the decree be reversed, and the cause be remanded, for further proceedings to be had therein, not inconsistent with the principles of this opinion.

SAFFOLD, C. J., not sitting.