## BORLAND v. PHILLIPS, *et als.*

1. Proof that a judgment was rendered in a suit by B. against the executor of P., and that the note on which the suit was founded, was executed by P., and that the record had been destroyed by fire, is not sufficient evidence to prove the identity of the note in a suit in chancery, in which the judgment was not evidence of the original debt. First, because the note itself was not produced, nor its absence sufficiently accounted for by proof of the destruction of the record; the note not being a necessary part of the papers of the cause. Second, because there was no proof of the identity of the note when made, to whom, and by whom made, for what amount, and when payable, without reference to the judgment, which was not evidence for any purpose, and could only have been looked to to refresh the memory of the witness.

2. The bill alleged, that on the 4th Nov. 1818, the testator of the defendant for a valuable consideration, with one E. E. Parks, made his note to the complainant for five thousand dollars, payable sixty-one days after date, at the branch bank at Milledgeville; that the note was negotiated and discounted at the bank, and the money obtained by the deceased, and that the complainant was afterwards compelled to purchase up the note from the bank; held, that this allegation did not show an original indebtedness from the deceased to the complainant, evidenced by the note, but must be understood to mean that the note was made to be discounted in the bank for the purpose of raising money, and that the complainant paid it to the bank as endorser; otherwise the payment would be voluntary, and would create no legal obligation.

3. That such being the allegation, proof of the note, merely, would not establish the liability of the maker of the note, but that it was necessary to go further, and to prove the payment of the money to the bank.

4. A decree cannot be made out of the scope and design of the bill, and especially against an infant, against whom no relief is prayed, and who is not liable immediately.

Error to the Chancery Court at Monroeville.

THIS was a bill in Chancery, filed by the plaintiff in error,

to subject the lands of Joseph Phillips, in the hands of his devisees and others, to the payment of a debt alleged to be due from him to the complainant.

The record is very voluminous, but need not be recited, as the case turned on a single point, the sufficiency of the proof to establish the debt alleged to be due from the deceased, and which is described at length in the opinion of the Court.

WILLIAMS, for plaintiff in error, upon the point on which the cause turned, insisted that the judgment obtained at law by the complainant, against the executor of Phillips, was evidence for some purposes, and at all events, that it was evidence of the debt as against the executor and his heirs. He cited the opinion of this Court when the case was here before, 3 Porter, 9. But at least, he insisted the debt was proved independant of the judgment by the evidence of Mr Parsons, that the loss of the note on which the judgment was founded, was sufficiently accounted for by the destruction of the records, by the burning of the court-house, and death of the clerk.

HOPKINS and SAFFOLD, contra, insisted that there was no legal evidence of the existence of a judgment against the executor, but that if there was, it was not evidence against the devisees of the deceased, as there was no privity between them and the executor, as was determined when the case was in this Court before; 3 Porter, 9.

That the proof of Parsons was insufficient to establish any thing; that the note, the supposed evidence of the debt, was not produced, nor its absence accounted for; that his testimony was uncertain, and entirely insufficient.

That at all events, the bill could not be maintained as to Saffold and wife, as to whom it had been dismissed in 1833, which decree was still in force.

ORMOND, J.—This bill was filed by the complainant, in the year 1826, to subject the lands of Joseph Philips, deceased, in the hands of his heirs and devisees, to the payment of a debt due from him to the complainant, upon the ground, that by his will, the deceased had charged his lands with the payment of his debts.

In the year 1833, a final decree was made in favor of the com-

plaintant, from which the defendants appealed to this Court, by which the decree was reversed, and the cause remanded for further proceedings. See the case reported, 3 Porter, 9, by the name of Darrington v. Borland.

By the decision then made, several questions of law presented on the record were settled, and must be considered the law of this case, as has been repeatedly held in this Court.

The debt alleged to be due the complainant, as stated in the bill, arose out of a transaction in the State of Georgia, in the year 1818.

It is alleged, that the deceased, "on the 4th Nov. 1818, for a valuable consideration, made and delivered to your orator, his certain promissory note, for the sum of five thousand dollars, which note was also signed by one Ezekiel E. Parks, and made payable to your orator, sixty-one days after date, at the branch bank in Milledgeville. Your orator further charges, that the said note was negotiated and discounted in said bank, and the money obtained by the said Joseph Philips; and your orator was afterwards compelled to purchase up from the bank, said note of five thousand dollars, with the interest which had accrued thereon, and to pay said bank therefor."

It is further alleged, that in 1822, the complainant commenced suit on the note in the Circuit Court of Monroe county, against Zeno Philips, executor of Joseph Philips, and at the March term, 1825, recovered a judgment for seven thousand four hundred and eighty-three dollars and thirty-three cents, besides costs, to be levied of the goods and chattels of the deceased, in his hands to be administered, and that the execution which issued was returned, no " property found."

This Court, after a most elaborate examination, among other things, held, that as there was no privity between the executor and the heirs, or devisees of the testator, a judgment against the former was no evidence in a proceeding against the latter, to subject real estate derived from the testator, to the payment of his debts, further than to repel a defence under the statute of non claim, but the original justice and continuing obligation of the debt alleged to be due from the testator, must be established.

The cause having been remanded, a reference was again made to the master to ascertain the debt due by the deceased

to the complainant, who reported a debt to be due, of upwards of sixteen thousand dollars. The report, and the evidence upon which it is founded, was excepted to, and appears in the record. So far as it relates to the debt, it consists of the testimony of Enoch Parsons and A. B. Cooper, Esquires.

The former testified, that at the March term, 1825, of Monroe Circuit Court, the complainant recovered a judgment against Zeno Philips, executor of Joseph Philips, for the amount stated in the bill, which judgment was founded on a promissory note, signed by said Joseph Philips; that he had seen him write, and believed it to be the note of Joseph Philips. That in 1833, the court-house of Monroe county, in which was kept the offices of the clerks of the Circuit and County Courts, was burnt, and all the interlocutory orders and decrees made in this cause, destroyed.

Mr Cooper proved the burning of the court-house of Monroe county, and the destruction of the records, except the papers of this cause; that he once saw the entry of a judgment against the executor of Philips, that an execution issued thereon, was returned no property found. He also proved the genuineness of the first report made by the master, Samuel McColl, previous to the reversal in this Court.

This evidence, both Chancellors Bowie and Crenshaw, who at different times passed on the report of the master, considered insufficient to establish the debt, charged in the bill to be due from the deceased to the complainant, and of that opinion is this Court.

The report of the master, made previous to the reversal of the cause, cannot be looked to for any purpose. The first decree was reversed in part, on the ground that the master was incompetent to act in that capacity, being also *guardian ad litem* to the minors. The judgment against the executor, admitting that it is satisfactorily proved, being no evidence against the defendants in this suit, the only remaining testimony is, the brief statement of Mr Parsons, that *the judgment was founded on a note which, from having seen the deceased write, he believed to have been executed by him.*

The first objection to this testimony is, that the note itself is not produced, or its absence accounted for. It has been urged, we must presume that it was destroyed with the records in the

clerk's office, but it is not shown that it was filed with the record, or any fact proved to raise that presumption. It is true, that it is frequently done, but it is not necessary that it should be so filed, and therefore no presumption can arise, that it was destroyed at the burning of the court-house, merely from the destruction of the record of the cause. Again, the note described by Parsons, does not correspond with the note described in the bill; that was a note made by the deceased and one Parks, and the note described by Parsons, is the individual note of the deceased. Its date, when payable, to whom payable, for what amount, and all other distinguishing characteristics are omitted, nor does the witness pretend that he has any knowledge on these points, further than that the judgment which he has described, was founded on a note. But as the judgment itself was not evidence, it could only have been referred to for the purpose of refreshing the memory of the witness, and is not in itself, evidence for any purpose. Yet, if we strike from the testimony of the witness, all that relates to the judgment, there will be nothing left, but that he once saw a note made by the deceased to the complainant, its date, to whom, and when payable, and for what amount, are all left in a state of uncertainty. It is too clear for argument, that such a statement would not prove the allegations of the bill.

There is, however, if possible, a more formidable objection than this, to the testimony.

The charge in the bill relating to the indebtedness of the deceased, seems to have been designedly involved in obscurity.— Thus it is first stated, that the note for five thousand dollars was executed by the deceased, and one Parks, for a valuable consideration, to the complainant, payable sixty-one days after date, at the branch bank at Milledgeville. It is then alleged, that this note was negotiated at, and discounted by the bank at Milledgeville, *and the money received by the deceased.* It is not stated that the deceased did not pay the bank at the maturity of the note, but the allegation is, " that your orator was afterwards compelled *to purchase* up from the bank, said note of five thousand dollars, with the interest which accrued thereon, and to pay the bank therefor."

It is not easy to conceive how any one could be compelled *to purchase* the note from the bank, nor indeed does it appear

very clearly from the statement of the case, that the complainant was under any obligation to *pay* it.

He describes himself as the payee of the note, but in that character, he was under no obligation to pay it, the note being negotiated, and the money received by another. If he paid the note voluntarily, and without being under a legal obligation to do so, he could not have enforced its payment from the deceased, or from his heirs or devisees, as the case will not permit one to make himself the creditor of another, without his consent; as, therefore, it is not shewn by the bill that the complainant was compelled to pay the bank, from being a party to the note, or that he paid it at the request of the deceased, the allegations of the bill, literally interpreted, do not show any indebtedness on tbe part of the deceased.

The only hypothesis upon which such an indebtedness could arise, consistent with the allegations of the bill, is, that the note was made to be discounted by bank, for the purpose of raising money, and that to accomplish this object, the note was made payable to the complainant, and indorsed by him. In this event, on the failure of the maker, he would be responsible to the bank, and might with propriety, have paid the debt.

This transaction is considered in the bill, a *purchase* of the note, but it is very clear, that by the payment to the bank, the note was extinguished, and could not afterwards be the foundation of an action, as was held by this Court at this term, in the cases of Foster v. The Athenæum, and Fletcher v. Gamble. By the payment, the complainant became a simple contract creditor of the deceased, and could have maintained an action against him to recover the amount so paid; not on the note, but for money paid to his use, and as his surety.

If, therefore, the note had been produced, and proved to have been executed by the deceased, it would have availed nothing in this view of the case, without the further proof that the deceased failed to pay the bank, and that the complainant being under a legal obligation to do so, paid the amount due on the note. Nothing of this kind was attempted to be proved, nor is it probable, was intended to be proved, as is evinced by the structure of the bill, which seems to have been framed with the view of superseding the necessity of such proof, by resting

the claim, not on the payment of the money to the bank, but upon the evidence afforded by the note itself, and the judgment obtained upon it against the executor.

Whether the possession of the note would not have been *prima facie* evidence that the holder had paid it, if the allegations of the bill had been, that as endorser, he was obliged to pay it, upon the default of the maker, it is not necessary to determine, because there is no such allegation in the bill, and because there is no proof of the identity of the note on which the judgment was founded, with the note described in the bill.

That the view here taken of the manner in which it must be understood, from the obscure allegations of the bill, the alleged indebtedness of the deceased to the complainant arose, is correct, there cannot be a reasonable doubt. It is not pretended that the deceased was indebted to the complainant when he executed the note described in the bill, nor is that supposition at all to be reconciled with the fact that the note was discounted at bank for, and the money received by, the deceased. In no possible aspect, however, in which the case can be viewed, will the proof offered, be evidence of any indebtedness on the part of the deceased, in this proceeding, and against these defendants. Whether its origin was money paid by the complainant for the deceased, and as his surety, or whether it was a direct indebtedness from the deceased to the complainant, in either event, there is no proof to sustain it.

It is, however, urged, that the judgment obtained by the complainant against the executor, who was a devisee under the will, was at least evidence against him, and those in privity with him.

The original bill was filed against Zeno Philips, the executor of Joseph Philips, and the other heirs and devisees, to compel a payment of the debt alleged to be due from Joseph Philips, by sale of the lands of the deceased, in the possession of the devisees and others, to whom it was alleged it had been improperly sold by the executor. It is alleged that the executor acted fraudulently in the administration of the estate, and carried with him to Texas a number of negroes and other personal property of the deceased.

After the decree made in this Court in 1833, a supplemental bill was filed, which alleges that Zeno Philips has departed this

life, leaving a wife and some minor children, whose names are unknown, but the bill was afterwards amended, so as to make Sarah E. Philips, only child of Zeno Philips, a party to the bill, who being a non-resident, an order for publication was made, and a guardian *ad litem* appointed, who answered the bill.

It may be conceded that the judgment obtained against the executor, is evidence against him, and all who are in privity with him, of the debt alleged to be due from the deceased to the complainant, but that alone will not authorize a decree against the heir of the executor.

The bill does not seek to charge lands in the hands of the executor or his heir, who, it is admitted, in the bill, are non-residents, without any property or effects in this State. Its precise object is, to charge the lands of Joseph Philips, in the hands of the devisees and others, to whom they were improperly sold by the executor, on the ground, that by his will, the testator had subjected his lands to the payment of his debts. If the allegations of the bill had been sustained, the decree must have been for a sale of the lands, nor could a decree be made for the rents and profits of the lands, unless the sale of the land was insufficient to satisfy the debt, as was held by this Court, when this case was last here.—3 Porter, 42.

No decree, therefore, can be made in this case, against the heir of Zeno Philips, because there is nothing upon which the decree can operate. It is not only not shown that any of the lands of Joseph Phillips are in the possession of the heir of Zeno Philips, or that she has any claim thereto, but it is expressly alleged, that she has no property whatever within this State.— The bill does not seek, and could not ask a decree against her individually, nor can any such be made, whatever may be the responsibilities of the legal representative of the executor, her father, in consequence of his wasting the estate of Joseph Philips.

A great many questions were argued at the bar with great ingenuity on both sides, which we have not considered necessary to examine, because the view here taken, disposes of the entire case. There being no sufficient evidence of the debt, to satisfy which the bill was filed, it is obvious that the bill must fail, and that all other questions connected with the complainant's right to recover, become unimportant.

Borland *v.* Philips, *et als.*

It may, however, be proper to remark, that no notice has been taken of the admission in the answer of the defendant, Saffold, that he believed the deceased was indebted to the complainant, but in what amount he did not know, because such an indefinite admission really proved nothing; and that if the admission was of any value to the complainant, it could not operate against the other defendants to the suit; and that it could avail nothing against him, because, as to him and his wife, the bill was dismissed in 1833, which decree has been acquiesced -in by the complainant; is now in full force, and from the lapse of time, cannot be revived.

Notwithstanding we have attained the conclusion that the debt alleged to be due from the deceased to the complainant, is not sustained by proof, we think it probable that a claim of some description, at one time, existed. Whether he has failed to prove it, because the lapse of time had deprived him of the means of establishing it, or whether the failure has arisen from negligence, in either case, the result must be the same. By the former decision of this Court, and by the subsequent decision of Chancellor Bowie, referring back the report of the master, because the debt was not sufficiently proved, the complainant was distinctly admonished of the exigency of the case, and the insufficiency of the testimony to establish the debt. He has adduced no further proof, because, in all probability, he cannot, although he has been pursuing the claim for twenty years, sixteen of which has been spent in the Court of Chancery.

The suit in Chancery is not exempt from the common lot; even that must have its termination; and if we could with justice to the defendants, dismiss this bill without prejudice, we should not consider this a proper case for the exercise of such a discretion; as the presumption after such a protracted litigation must be, that all the evidence has been offered which it is in the power of the party to produce. That which he has offered, though it may raise a suspicion of indebtedness, does not prove the existence of a debt.

Our conviction is, that the decree of the Chancellor, dismissing the bill, for want of proof of the existence of the debt alleged to be due from Joseph Philips, is correct, and it is therefore affirmed.