### THE HEIRS OF BOND v. SMITH, ADMINISTRATOR.

1. When an executor or administrator petitions the County Court for leave to sell the lands of the deceased, on the ground that the personal estate is insufficient to pay all the just debts of the deceased, the heir may show that such debts are not a charge on the estate, being barred by the statute of limitations.
2. Since the creation of separate Chancery Courts, a cause cannot be transferred from the Orphans' Court to the Circuit Court, but it seems in such a case, Chancery would have jurisdiction.

Error to Sumter Circuit Court.

THIS was a petition filed in the Orphans' Court of Sumter county by the defendant in error, as administrator of John

Bond, deceased, setting forth that the personal estate of his intestate was insufficient to pay the just debts against the estate without a sale of the real estate, which is particularly described; the petition sets out tne names of the heirs, and prays-that commissioners be appointed, &c.

Upon this petition an order was made, that notice be given the heirs by publication in the Voice of Sumter, a newspaper published in the county; affidavit having been made that they were non-residents.

At a subsequent term an order was made that the Judge of the County Court having been of counsel for one of the parties, the cause, together with all orders and papers relating thereto, be transfered to the Circuit Court of Sumter county.

A guardian *ad litem* having been appointed to the infant heirs, he answered, denying the allegations of the petition. The widow of the deceased, who had since his death intermarried with one Walker, also answered, denying the allegations of the petition, and insisting that the deceased left personal property sufficient to pay all his just debts, that if any such pretended debts existed, they had long since been barred by the statute of limitations.

An issue being submitted to a jury, they rendered their verdict, that the personal property of the deceased, at the time of his death, and at the time of the filing of the petition was insufficient to pay his debts. Upon this verdict, the Court decreed a sale of the land, and appointed commissioners to carry the decree into effect.

Upon the trial of the issue, a bill of exceptions was taken by the defendants, from which among other things, not necessary to be noticed, it appears that before the trial of the issue, the defendants offered to file the plea of the statute of limitations to any and all the supposed debts of John Bond, deceased, which the Court refused; to which the defendants excepted.

Other objections were also taken to the testimony, which need not be here noticed, as the case went off on other grounds.

The defendants prosecute this writ, and assign for error, among other assignments, that the Court erred in refusing to permit the plaintiffs in error to insist on the plea of the statute of limitations.

HUNTINGTON, for plaintiffs in error, cited 2 Pickering 567; 2 Eq. Rep. 55; 2 Haywood, 7; 6 Johns. Chan. Rep. 360; 15 Vesey jr. 479; 13 Mass. 162; 7 Wheaton, 60; 1 Russel and Milne, 347; 1 Harrington, 218; 3 Johns. C. Rep. 319.

No counsel appeared for defendant in error.

ORMOND, J.—The principal question in this case, is the right of the heir to plead the statute of limitations, on an application by the administrator to sell real estate, to pay the debts of the ancestor, on the ground that the personal estate is insufficient for that purpose. This is a question of great moment, and has not been adjudicated in this Court.

The statute of this State on which this application is made, provides that it shall be lawful for an administrator or executor, who has not power by the will of the testator to pay debts to file a petition in the County Court, setting forth that the personal estate of the testator or intestate is insufficient for the payment of the just debts of such testator or intestate, describing the heirs the lands proposed to be sold, &c. Upon the filing of the petition, the Court is required to issue citations to such of the heirs as are of full age, and to appoint *guardians ad litem* to such as are minors; and it is made the duty of such guardian to deny the allegations of the petition. The Court is not authorized to decree a sale of the land where the allegations of the petition are denied, unless satisfied by proof. Such is a brief abstract of the law under which this proceeding is had. Aik. Dig. 180, 181.

It is very clear that the Legislature did not contemplate a sale of the lands, as a matter of course on the application of the executor or administrator, but required him to establish the allegations of his petition by proof, if denied by the heir; and where the heirs are infants, no admission can be made to dispense with this proof. What then is the allegation to be proved, it is that the personal estate is not sufficient to pay the just debts of the testator or intestate. To ascertain this, it is obviously necessary to inquire what debts are binding on the testator or intestate, and consequently a charge on the estate; and it seems to us that any defence which the ancestor could have made, if the suit had been brought against him, may be

made by the heir. The proceeding is in effect a suit by the creditors against the heirs, claiming satisfaction out of the estate which has descended to them for a debt due from the ancestor. It does not therefore rest with the administrator to say whether the bar of the statute of limitations shall be interposed or not; he is placed in an antagonist position to the heir, and cannot therefore make any admission which shall prejudice him. His power to meddle with the real estate is derived entirely from the statute ; it is a special authority derived from the order of the Court on proof of the allegation of the petition, and confers no power further than is necessary to execute the trust with which he is clothed for the benefit of the creditors.

It is true, that while acting within his appropriate sphere, as the representative of the deceased, he may decline to interpose the bar of the statute to defeat a just claim; but when he lays down his character of representative of the deceased, and becomes a party litigant on behalf of the creditors, against the heirs, it would be a strange anomaly, if he should be allowed to dictate the defence.

The cases cited by the counsel for the plaintiff in error, demonstrate the law as here laid down. Thus, in the case of Richmond, administrator petitioner, &c. 2 Pickering, 507, it was held that an administrator could not, by his own promise, revive a debt due himself, barred by the statute of limitations, and leave to sell the real estate to pay such debt was refused. So in Scott v. Hancock, 13 Mass. Rep. 162, the Court refused a license to sell real estate on the application of an administrator, on the ground, that the debt, to pay which the land was proposed to be sold, was barred by the statute of limitations. In the case of Mooers v. White and others, 6 John. C. Rep. 360, in a most elaborate opinion, in which all the cases are noticed, Chancellor Kent held, that an acknowledgment or admission made by an executor or administrator, would not bind the real assets in the hands of an heir, or affect his right to plead the statute of limitations.

In Shewen v. Vanderhorst, 1 Russell & Milne 347, a residuary legatee had filed a bill to have an estate administered, and the trusts of the will carried into execution. An account

being ordered to be taken of the debts, a creditor went before the Master to prove a debt barred by the statute of limitations. The executor did not object, but the objection was taken by the plaintiff, and allowed by the Master. On exception to the Master's opinion, the Master of the Rolls affirmed it; and on appeal, his judgment was affirmed by Lord Chancellor Brougham. Many other authorities might be cited, but we consider the question free from doubt, that upon an application by an executor to sell real estate to pay debts, from a deficiency of personal assets, the heir may dispute the right to sell, and show that the supposed debts are barred by the statute of limitations.

The jurisdiction of the Circuit Court to entertain this application, has also been questioned in the argument; and although this point is not distinctly presented by the assignment of errors, as the cause must be remanded, we think it proper to examine it.

The record states that the cause was transferred to the Circuit Court of Sumter county, because the Judge of the County Court had been of counsel for one of the parties. The statutes relied on to sustain the jurisdiction, are the following :

" If any person shall be appointed Judge of any County Court in this State who was employed as counsel in any cause depending in said Court, the said cause shall be removed to the Circuit Court of said county." [Aik. Dig. 246.] " In all settlements hereafter to be made by executors, administrators or guardians, with the Orphans' Court, in which the Judge of said Court may have been employed as counsel, or may be otherwise interested in such settlement, it shall be the duty of said Judge to give immediate information of the fact to one of the Judges of the Supreme or Circuit Courts, who shall thereupon issue a commission to three persons of the proper county, directing and empowering them to proceed to make said settlement, under the rules and regulations prescribed by law. Such settlement, when made as aforesaid, shall be duly recorded by the clerk of the Orphans' Court, and shall have all the force and effect of settlements made by the Judge of the Orphans' Court." (Ib. 253.)

The heirs of Bond v. Smith, Administrator.

The law last cited evidently applies only to a final settlement of accounts, in order to close an administration or guardianship, and cannot with any propriety be construed to authorize the persons so appointed to do any thing more than to close the estate by making a final settlement. If the Legislature had intended to vest the persons so appointed with *all* the power of a Judge of the County Court, to do every thing necessary to the conduct of an administration suit, from its commencement to the final settlement, no language can well be conceived more inappropriate to effect the object.

The clause first cited manifestly applies to suits pending in the County Court proper, which are conducted according to the course of the common law. If, however, the term, *suit*, be considered broad enough to embrace a petition for the sale of lands to pay debts, it cannot be presumed that the Legislature intended to refer it to the common law side of the Circuit Court. At the time of the passage of this act, the Circuit Courts exercised chancery jurisdiction; and as there would be no great difficulty in adapting the flexible machinery of the Chancery Courts to suit the statutory mode of proceeding in the Orphans' Court, the cause would doubtless have been placed on the chancery docket. But since the separation of the common law and chancery powers of the Circuit Court, and the transfer of the latter to separate Courts, we cannot think the Circuit Court can take jurisdiction.

The powers of the Circuit Court are doubtless adequate to the ascertainment of the insufficiency of the personal estate of a deceased to pay his debts, and to order a sale of his land for that purpose; but there it would end. The proceeds of the land when sold, do not go into the hands of the administrator until he gives bond and surety faithfully to apply the proceeds. This bond must be made payable to the Judge of the County Court. But this is not all: the proceeds are to be applied rateably among the creditors, and their debts are to be ascertained by the Court, or by commissioners, previous to distribution. All this might have been accomplished by the Chancellor, moulding his proceeding as near as possible to the statutory regulation; but the common law Judge would be met at every step by obstacles difficult, if not impossible, to surmount.

47

It cannot be supposed that, by the word, *suit*, the Legislature meant merely an *incident* of a cause. It was doubtless intended that the tribunal to which the suit was transferred, should have power to conclude it. For, as the transfer to the Circuit Court was caused by the inability of the County Court to act in the matter, if the Circuit Court could not finish the litigation, it could not be brought to an end. We are therefore of opinion that, since the establishment of the separate Chancery Courts, this is a case unprovided for by statute. It has been urged, that the transfer should be to the Chancery Courts; but this would require a latitude of construction too nearly approaching to legislation to be adopted; especially as we do not doubt that, in such a case, the application could be made directly to a Court of Chancery, whose general powers over the subject would give the Court jurisdiction when the County Court had no power to act.

These views, as they dispose of the whole case, render it unnecessary to consider the other questions presented by the assignment of errors.

Let the judgment be reversed, and the cause remanded.

COLLIER, C. J.—I concur with my brothers in reversing the judgment of the Circuit Court, but cannot agree with them in the opinion, that the present is not a case which, under the statute, was transferrable to that Court. The act referred to, [Aik. Dig. 246,] is beneficial and remedial, and upon a just construction, authorizes the transfer of a cause from the Orphans' to the Circuit Court. An application for an order to sell the real estate of a testator or intestate, is a proceeding (however liberally conducted) at law; and should not, if the Circuit Court had equity jurisdiction, be placed on the Chancery side of that Court.