# Jacobson & Co.'s Assignees *v.* Sims, Harrison & Co.

*Motion by Assignees in Bankruptcy for Dissolution of Attach-
ment.*

1.　*When assignee must intervene in attachment suit.*—If goods are fraudulent-
ly transferred by a debtor, in anticipation of bankruptcy, and are omitted
from his schedules, the title of the fraudulent grantee becomes perfect, as
against the assignee in bankruptcy, or a trustee appointed by the creditors,
unless the latter asserts his claim within two years, as required by the second
section of the bankrupt law; and if a creditor attaches them in the hands of
the fraudulent grantee, and pursues them through a protracted and expensive
litigation for three or four years, without any intervention or claim on the
part of the assignee or trustee, the latter can not then have the attachment
dissolved, because it was sued out within four months before the commence-
ment of proceedings in bankruptcy, and claim the goods, or their proceeds, as
part of the bankrupt's estate.

APPEAL from the Circuit Court of Sumter.
Tried before the Hon. LUTHER R. SMITH.

.This was a motion by William W. Henry and J. W. Smith, as assignees of Jacobson & Co., bankrupts, or trustees elected by the creditors of said bankrupts, to dissolve an attachment sued out by Sims, Harrison & Co. against said Jacobson & Co., on the ground that it was sued out within four months before the commencement of the proceedings in bankruptcy. The attachment was sued out on the 16th April, 1872, on the ground that said Jacobson & Co. were non-residents of Alabama; and it was levied on a stock of goods in the possession of one Joseph Zimmern, who was also summoned by garnishment as the debtor of said Jacobson & Co. At the return term, in October, 1872, the attachment was quashed, on motion of said Jacobson & Co.; but, on appeal to this court, at its June term, 1874, the judgment was reversed, and the cause remanded, as shown by the report of the case: *Sims, Harrison & Co. v. Jacobson & Co.*, 51 Ala. 186–90. On the 1st May, 1872, said Jacobson & Co. filed their petition in the District Court of the United States for the southern district of Mississippi, in which district they resided, asking to be discharged as bankrupts; and they were adjudged and declared bankrupts on the same day. At a meeting of their creditors, held on the same day, the plaintiffs in this motion were elected trustees of the bankrupts' estate, and their selection was approved by the court; and on the 20th May, 1872, an assignment was executed by the bankrupts, conveying all their estate and property to said trustees. The proceedings had in the attachment suit after the remandment of the cause by this court, and the litigation growing out of it, are stated in the opinion of the court. At the April term, 1876, the trustees first submitted their motion to dismiss the attachment, on the ground that it was sued out within four months before the commencement of the proceedings in bankruptcy. The court overruled the motion, "and condemned the property attached to the satisfaction of plaintiffs' claim against said Jacobson & Co.; to which action of the court the said trustees then and there excepted," and they here assign it as error.

SNEDECOR & COCKRELL, for appellants.—By the 14th section of the bankrupt act, so soon as an assignee is appointed and qualified, and an assignment to him of the bankrupt's estate has been executed, "such assignment shall relate back to the commencement of said proceedings in bankruptcy; and thereupon, by operation of law, the title to all such property and estate, real and personal, shall vest in said assignee, although the same is then attached on mesne process as the property of the debtor, and shall dissolve any such attach-

[Jacobson & Co.'s Assignees v. Sims, Harrison & Co.]

ment made within four months next preceding the commence-
ment of said proceedings." But the attachment is legal and
valid, until dissolved; the proceedings in bankruptcy must
be presented by a proper party, before a judgment of disso-
lution can be rendered; and it is the duty of the court to
proceed with the cause, until properly informed of the
changed relations of the parties.—*Eyster v. Gaff*, 1 Otto, 521;
*Sims, Harrison & Co. v. Jacobson & Co.*, 51 Ala. 190; *In re
Houseberger*, 2 Bank. Reg. 92. The assignee is the proper
party to appear in the State court, and have the attachment
dissolved on motion.—50 Georgia, 302. The attached prop-
erty is in the possession of the court, and not of the attach-
ing creditors.—*Johnson v. Bishop*, 8 Bank. Reg. 533. No
time is specified, within which the assignee must intervene.
The limitation of two years, prescribed by the second section
of the bankrupt law, for suits by or against "any person
claiming an adverse interest," does not apply to the case.
The statute of limitations does not begin to run, until there
is some one entitled to sue, and some one liable to be sued.
Cases cited in 2 Brickell's Digest, 220, § 35. Here, the
attaching creditors could not be sued: they had no estate
whatever in the attached goods, or in the proceeds of sale,
until a condemnation thereof to their judgment when ren-
dered; and their inchoate lien, acquired by the levy of the
attachment, was not held adversely to the assignees, but
subject to their right to intervene. So far as this question
is concerned, the present bankrupt act is similar to the act
of 1841; under which, the construction for which appellees
here contend, as to the meaning of the word "*suit*," was
repudiated by the Supreme Court of Pennsylvania, in *Union
Canal v. Woodside*, 11 Penn. 176. The limitation applies only
to disputes about property to which adverse claims existed
while in the hands of the bankrupt, and before assignment;
as to which, a short statutory bar was deemed expedient.—
39 N. Y. 302; 5 Blatch. 54. A petition for the distribution
of a fund, lodged in the court, is not within the limitation of
two years.—4 Bank. Reg. 553.

R. H. & G. L. SMITH, with JAMES COBBS, *contra*.—The 14th
section of the bankrupt act, as to the dissolution of an attach-
ment sued out within four months before the filing of the
petition in bankruptcy, was intended to provide a remedy
for the recovery of property taken by the levy from the pos-
session of the bankrupt himself, and to place the property in
the possession of the assignees, or trustees, for the benefit of
his creditors. Here, a dissolution of the attachment would
only restore the property to Zimmern, from whose possession

it was taken, and whose title to it, as against these attaching creditors, has been judicially determined to be worthless; and from whom, moreover, the trustees could not recover it, being barred by the limitation of two years. The 14th section of the law can have no application to such a case, but the trustees should have proceeded by a suit in equity under the 35th section. The trustees may, or may not, at their election, intervene in a pending attachment suit; but, if they do intervene, it must be by a motion or petition in which they are the actors, and the attaching creditors are the defendant; and such proceeding is a new and independent suit, presenting new issues, and involving different rights. That such a proceeding is a suit, and therefore within the limitation of two years, see Story's Com. on Constitution, vol. 3, § 1719; *Weston v. City Council of Charleston*, 2 Peters, 464. The said 14th section, in giving the assignees a right to have an attachment dissolved, and in vesting in them all the property of the bankrupt, uses language equally strong; yet, a suit to recover such property, not in the possession of the bankrupt, must be brought within two years.—*Comegys v. McCord*, 11 Ala. 932; *Harris v. Collins*, 13 Ala. 388.

MANNING, J.—*Jacobson & Co.* were doing business as merchants at Meridian, Mississippi, and, on the 1st of May, 1872, filed their petition to be adjudged bankrupts, and discharged as such. With their petition, they filed schedules, alleged to be complete, of all their partnership property and effects, but none of their individual estates, for the reason that they had no individual property, as they said, and owed no debts as individuals, from which they desired to be released. Nevertheless, they asked leave to file additional schedules, if found necessary, by way of amendment. At the first meeting of their creditors, on the 20th of May, three-fourths in value of those who proved their claims elected and resolved, in accordance with one of the sections of the bankrupt law (§ 5103, Rev. Stat. U. S.), that the estate of the bankrupts should be wound up and settled, and distribution made among the creditors, by trustees, under the direction of a committee of the creditors; and they elected appellants trustees, and Charles Hopkins & Co., and Taylor & Co., of Mobile (among the largest creditors), the committee; which action of the creditors was confirmed by the court. About a month before this time, Sims, Harrison & Co., appellees in this cause, being creditors of Jacobson & Co., to a considerable amount, had, in April, 1872, and before the application of the latter to be declared bankrupts, sued them by an attachment against their property, returnable into the Cir-

cuit Court of Sumter county, Alabama, and had it executed by a levy upon merchandise found in possession of Joseph Zimmern in that county, as the property of Jacobson & Co., and by having Zimmern and one Wise severally summoned to answer, as garnishees, what they were respectively indebted &c. to Jacobson & Co. Wise answered, acknowledging an indebedness of a few hundred dollars. Zimmern made no answer; but having claimed the goods attached as his own, the sheriff required of Sims, Harrison & Co. an indemnifying bond, with sureties, to the amount of $10,000, for his protection against damages for making the levy; and on this bond Zimmern, in September of the same year, sued them and their bondsmen for that sum.

Jacobson & Co. did not report the goods thus levied on to the bankrupt court, as their property, nor did the trustees set up any claim to them, except as will be hereafter shown. But in October following, when Sims, Harrison & Co. filed their complaint in the attachment cause, Jacobson & Co. appeared specially therein, and pleaded in abatement certain defects in the papers, and that the goods attached did not belong to them, and that the levy was made within four months of the time before they were adjudged bankrupts. Out of the pleas grew motions, on the part of Sims, Harrison & Co. for leave to amend the defects in their papers, and, on the part of Jacobson & Co., for a dissolution of the attachment; which motions were decided in favor of Jacobson & Co., in the Circuit Court, and against them on appeal to this court; from which the cause was remanded for further proceedings therein below.—*Sims, Harrison & Co. v. Jacobson & Co.*, 51 Ala. 186. In the meantime, about three years had elapsed; during all which time, Zimmern's suit against Sims, Harrison & Co., conducted by the same attorneys who were representing Jacobson & Co. in the other, was suspended in the Circuit Court. About a year afterwards, April 21st, 1876, upon a trial by jury, a verdict was rendered in the cause against Zimmern, deciding that the goods he claimed were subject to the attachment in favor of Sims, Harrison & Co. against Jacobson & Co. Thereupon, *Henry and Smith*, who were elected four or five years before, by the creditors of the bankrupts, as trustees for them, immediately intervened, by the same attorneys who had represented Jacobson & Co. and Zimmern throughout, and moved the court "to dissolve the attachment in this case, upon the ground that the same was sued out within four months of the commencement of the said bankrupt proceedings, and that the money for which the goods, which were perishable, had been sold, be paid over to them as trustees."

This motion was overruled, and Sims, Harrison & Co. and the trustees having thus all become parties to the cause, by agreement, through their attorneys, 'all parties consenting to try the issues before the court, without the intervention of a jury,' the judge, upon the evidence, and admission of the discharge in bankruptcy of Jacobson & Co., considered that no personal judgment should be rendered against them, but that plaintiffs were, in effect, entitled from the proceeds, so far as sufficient, of the property and effects attached, to have $6,739.24, besides the costs of suit, and that after the costs were paid, the residue of the proceeds, not to exceed the amount of the judgment, should be paid to the plaintiffs. Judgment was entered accordingly ; and Henry and Smith, the trustees, have appealed to this court, claiming to be entitled to the money adjudged to Sims, Harrison & Co., and assigning as error the ruling and judgment of the Circuit Court to which they excepted.

The judgment of the court below was, probably, based upon the opinion, that appellants should have intervened with their motion to dissolve the attachment, or get possession of the attached goods, within the two years which the bankrupt law prescribes as a bar to any suit by or against an assignee or trustee. But they contend, that this limitation does not relate to suits for goods and effects that should have gone with the property surrendered by the bankrupts, but were kept back by collusive arrangements between them and a third person; and that whenever it is ascertained that they belonged to the bankrupts, the trustees have a right to demand them. Without considering any other question that might arise, let us see what was the situation in the present case.

The goods in controversy were in possession of Zimmern: they were transferred to him in March, 1872 : he, residing in an adjoining county to that in which Jacobson & Co. resided, but in another State, held and claimed them there as his own ; and Jacobson & Co. did not mention them in the schedule, which they swore contained a list of all their property. Here, then, were goods, held adversely to them, and to the trustees. The former could not recover them at all; and Zimmern would evidently have acquired a good title against the trustees, by their mere omission to sue him for them within two years, if he had retained them so long. This would hardly be disputed. In that situation, the goods were lost to the creditors, if not sued for within two years. But Sims, Harrison & Co., believing that they were about to be defrauded, sued out an attachment, and had the goods taken, not from Jacobson & Co., who disclaimed all interest in them, but from Zimmern. The controversy, therefore, was with him.

The trustees might also have sued him; and if necessary to enforce their superior rights under the bankrupt law, might have also sued the attaching creditors with him. But, by failing for two years to assert any title against Zimmern, his title would have become good against them. When, therefore, the attaching creditors afterwards obtained a judgment for the goods, or the proceeds of them, against Zimmern, they did not get anything in which the trustees had, or could then assert, any interest whatever. Upon what principle can they claim, from the attaching creditors, the fruits of their long and expensive litigation with Zimmern, about property which, in his hands, was perfectly secure from them? Shall the diligence and risks of these creditors, in their own behalf, be imputed, and the results of their struggle be appropriated, to the trustees, who have done nothing, or to the other creditors, whose committee have stood by without raising a hand, while the attaching creditors were carrying on their contest against the fraudulent bankrupts and their fraudulent grantee, year after year, and in court after court? That would be an injustice which the law can not sanction.

Besides, there is nothing in this record to show that these goods, which were in Zimmern's hands, were at any time subject, or could have been made subject, to the debts mentioned in the bankrupt schedule. The goods were transferred to Zimmern, in March. When those debts were contracted—whether before or after that time—does not appear. The petition mentioning them was filed in the bankrupt court in May. True, it is very probable, from the amount of the indebtedness reported, that some of it was contracted before March. But, on the other hand, Jacobson & Co. may not have owed a dollar of them then. Their bankruptcy may have suddenly been brought on, by unfortunate dealings with those creditors, and heavy losses consequent thereon, or otherwise; and it might have been that it was only against Sims, Harrison & Co., that the transfer of the goods to Zimmern was void. The decisions of courts must be founded on evidence, not conjectures. "The record of a judgment rendered against the defendant in execution, after his sale to the claimant" [however short the time before], "is not admissible evidence against the claimant, to prove an indebtedness prior to its rendition." *Snodgrass v. Br. Bank*, 25 Ala. 161. And there is nothing in this record to show that any of the persons reported as creditors of Jacobson & Co., in their schedule, became such one week before the schedule was filed.

There is no error against appellants; and the judgment of the Circuit Court is affirmed.