# Scott *v.* Ware.

## *Bill in Equity by Judgment Creditor, against Heirs and Devisees of Deceased Debtor.*

1. *Decedent's estate; subjecting lands, in equity, to payment of debts.*—A court of equity has not original, inherent jurisdiction to decree a sale of lands, whether descended or devised, for the payment of the debts of the deceased owner.

2. *Liability of lands, at common law, to debts of deceased owner.* —At common law, lands descended were not assets, and were only liable for debts due by specialty, which bound the heir ; and lands devised could not be reached, unless they were charged by the testator with the payment of debts.

3. *Same, under statutes.*—By the statutes of this State (Code, §§ 2429–31), a decedent's entire estate, real and personal, saving the constitutional and statutory exemptions, is charged with the payment of his debts ; and all debts, without regard to their character, except the preferred debts for funeral expenses, *etc.*, stand upon an equality : no preference can be made or given by the personal representative, nor can any creditor acquire a preference or priority by diligence.

4. *When creditor may come into equity, to subject lands descended or devised; and form of bill.*—When a creditor files a bill in equity, to reach and subject the lands of his deceased debtor to the satisfaction of his debt, he must have established it by a judgment at law, and exhausted his legal remedies; must aver and prove a want of personal assets, and the insolvency of the personal representative and his sureties; and must sue on behalf of himself and all other creditors.

5. *Defenses to such suit.*—The heirs or devisees, as defendants to such creditors' bill, may make any defense against the alleged debts which the decedent, if living, might have made, or which would have been available to the personal representative in an action at law; and may also set up defenses which the personal representative has, by his own acts or laches, precluded himself from making.

6. *Judgment against personal representative; effect as against heir or devisee.*—There is no privity between the personal representative and the heir or devisee; a judgment against the former is not binding on the latter, nor even evidence, as against him, of any other fact than its rendition, of which it is evidence against all the world.

7. *Statute of limitations, as defense to suit against personal representative, heir or devisee.*—An executor or administrator is not bound to plead the statute of limitations, in defense of an action founded on a debt of his testator or intestate; and he may, as to himself, prevent the bar of the statute from attaching, or remove it after it has attached, by an express promise ; but such promise on his part, or failure to plead the statute, can not prejudice the rights of the heir or devisee, nor charge the land with the payment of the debt.

8. *Same.*—If an action is commenced against the personal representative before the bar of the statute of limitations is complete, the operation of the statute is thereby arrested, and the original debt becomes merged in the judgment; but, when the judgment was rendered after the completion of the statutory bar, and the time when the action was commenced is not shown by the creditor, the court will not indulge in any presumption or intendment as to that time, in order to prevent the bar of the statute as in favor of the heir or devisee.

9. *Mortgagee's remedies after default.*—After default in the payment of the

[Scott v. Ware.]

secured debt, a mortgagee has several distinct remedies which he may pursue, and there are defenses peculiar to each of these remedies: if he brings an action at law on the note or debt, the statute of limitations of six years is a bar, although the mortgage is under seal, and the right of foreclosure would not be barred until after the lapse of twenty years.

10. *Partial payment, as preventing or removing statutory bar.*—A partial payment, before the statutory bar is complete, or an unconditional promise in writing, signed by the party to be charged thereby, is necessary to prevent the operation of the statute of limitations (Code, § 3240); and a bill of exchange, for the entire amount of the debt, can not operate as a partial payment, nor prevent or remove the bar.

11. *Amendment of bill; what allowable.*—Under a bill filed by a creditor in behalf of himself and all other creditors of the deceased debtor, the complainant can not, by an amended bill, ask the foreclosure of a mortgage given to secure his individual debt.

APPEAL from the Chancery Court at Montgomery.

Heard before the Hon. H. AUSTILL.

The original bill in this case was filed on the 1st September, 1873, by George S. Scott, as a creditor of Robert J. Ware, deceased, on behalf of himself and all other creditors who might come in and make themselves parties, against Robert Y. Ware, as executor, and individually as one of the devisees under the will of the said Robert J. Ware, and the several other devisees; and sought to subject, to the payment of the complainants' debts against said testator, the lands devised by him to the several defendants. The material facts were thus stated in the opinion of the court:

"BRICKELL, C. J.—The original bill was filed by the appellant, as a creditor of the testator, alleging the existence of other debts, and is on behalf of himself and all other creditors who may come in and make themselves parties, seeking to subject lands devised. The first amendment is the introduction of an additional allegation, showing that the testator died seized of certain lands which were not devised, but not of sufficient value to satisfy the unpaid debts, and which, of course, were primarily liable to the payment of debts. It is averred that the debt due to the appellant was evidenced by the promissory note of the testator, of date December 5th, 1859, for the sum of $17,223.53, payable to Charles T. Pollard, three years after date, with interest from date; which Pollard had transferred to appellant. On this note, on the 26th day of September, 1872, the appellant recovered judgment against the executor, in the Circuit Court of Elmore; on which execution had issued, and been returned *No property found.* The insolvency of the executor is averred, and the fact that he was relieved by the will of the testator from giving bond and security. There is, also, an averment, which the parties seem to have accepted as sufficient, of a want of personal assets to satisfy debts.

[Scott v. Ware.]

"A second amended bill was filed, alleging that the testator had executed a mortgage upon certain lands, to secure the payment of the debt owing Pollard, and assigned to appellant. The insufficiency of the mortgaged premises to pay the debt is averred, and a decree of foreclosure and sale is prayed; and that on the distribution to the creditors, the appellant may receive the proceeds of the sale of the mortgaged premises, and after that may share ratably with the other creditors. The third amended bill avers, that within six years after the last payment made by the testator, three of the devisees, Robert Y. Ware, A. A. Ware, and Thomas J. Molton, induced the appellant to purchase the said debt from Pollard, and waived the statute of limitations, so far as it had then run, and made a partial payment thereon, and agreed and promised in writing, unconditionally, to pay and guarantee the payment of said debt; and for the purposes of said guaranty and partial payment, and as collateral for said debt, gave their obligations in the shape of certain bills of exchange, copies of which are exhibited. These bills are drawn by Robert Y. Ware, for the payment of nine thousand dollars each, to the order of Thomas J. Molton, or Asenath A. Ware, and indorsed by Molton; one payable November 1st, 1871; the other, December 1st, 1871; and not being paid at maturity, were protested, of which notice was given. It is further averred, that the debt is evidenced by the mortgage, which is under seal, and the present suit was brought within ten years after the last payment made; but the time of such payment is not stated.

"The testator died on the first day of November, 1867. When his will was admitted to probate and letters testamentary granted, is not stated; the averment being that it was *shortly after the death* of the testator. The original bill was filed on the first day of September, 1873. Demurrers were interposed, the substance of which is, that the lands devised or descended are not subject to the payment of the debt, because it was barred by the statute of limitations of six years."

W. A. GUNTER, for appellant.—1. The statute of limitations of six years, set up as a defense to the bill by the devisees, is the principal question in the case. As the debt matured during the late war, the statute of limitations did not commence to run until the 21st September, 1865.—*Harrison v*] *Heflin*, 54 Ala. 552. The statutory bar would, then, have been completed on the 21st September, 1871, but for the death of the debtor, Robert J. Ware, on the 1st November, 1867; and the effect of his death, on the operation of the

statute, is the material matter of controversy. For the appellant it is contended, that a suit against the heir, on the debt of the ancestor, is forbidden for at least two years and a half, and is never necessary unless the personal representative has been false to his trust. By express statutory provision, all periods of injunction and statutory prohibitions must be deducted, in the computation of time under the statute of limitations (Code, § 3247); and the rules of the common law, without the aid of any statute, required such deduction.—*Posey & Coffee v. Decatur Bank*, 12 Ala. 802; *Haupt v. Shields*, 3 Porter, 247; *Hutchinson v. Tolls*, 2 Porter, 44; *Dowdell v. Webber*, 2 Sm. & Mar. 452. On the same principle, when there is no one capable of suing, the period of this disability is deducted.—*Wyatt's Adm'r v. Rambo*, 29 Ala. 510; *Lawson v. Lay*, 24 Ala. 187; *Hopper v. Steele*, 18 Ala. 828; *Johnson v. Wren*, 3 Stew. 172. The reason of the statute is founded on the supposition of a right to sue, and the neglect of that right.—2 Parsons on Contracts, 61, 90. If, then, there is a statutory prohibition of suit against the heir, that period must be deducted when the heir pleads the statute.

At common law, only creditors by specialty could sue the heir, and they might sue him immediately upon the death of the ancestor.—Chitty on Contracts, 7; 3 Bacon's Abr. 616, 625; Toller on Executors, 225, 327. At common law, too, the executor might give a preference, or a creditor might by diligence acquire a preference over other creditors of the same class, although the estate was insolvent. But our statutes abolish the distinction between specialty debts and simple-contract debts, subject the land to the payment of all debts equally, and require suit against the personal representative. The several statutory provisions, in reference to the administration of the estates of deceased persons, are a revision of the whole subject, and entirely supersede the common law.—*Ikelheimer v. Chapman*, 32 Ala. 683; *Carrington v. Manning*, 13 Ala. 611; *Lemay v. Walker*, 62 Ala. 39. Though the legal title to the lands still descends to the heir, they are charged by the statute with the payment of debts; and the personal representative may claim and sell them for that purpose, after exhausting the personal property. The executor or administrator can not be sued for six months after the grant of his letters, and no judgment can be rendered against him until the lapse of eighteen months from his qualification; and at the expiration of that time, if the estate has been reported insolvent, pending suits must await the decision of the Probate Court on the question of insolvency, and subsequent payment through its instrumentality.

These statutory provisions contemplate a ratable distribution of the assets among all the creditors, forbid any race of diligence between them, and take away all right of suit against the heir in the first instance.—*Carrington v. Manning,* 13 Ala. 611; *Anderson v. McGowan,* 42 Ala. 286. Without statutory authority, a *scire facias* does not lie against the heir, on a judgment against the executor or administrator, to have execution of the lands (*Bell v. Robinson,* 1 Stew. 193; *Fitzpatrick v. Edgar,* 5 Ala. 439); and the statute giving this remedy was left out of the Code of 1852, and has never been re-enacted. If the executor or administrator has not sold the lands for the payment of debts, or has been otherwise faithless to his trust, the creditor may still follow the assets, and subject them to his debt by bill in equity; and he can not commence such a suit, until he has exhausted his legal remedies.—*Pharis v. Leachman,* 20 Ala. 662.

The only possible suit, then, which a creditor can maintain against the heir or devisee, to subject the lands to the payment of his debt, is founded on a breach of trust and duty by the executor or administrator, and requires an averment that he has been sued to insolvency. In the action on the debt, the creditor could not obtain judgment against the personal representative until the expiration of eighteen months from the grant of letters; to which must be added six months for the issue and return of an execution *de bonis testatoris, or intestatis,* and a like period for an execution *de bonis propriis;* thus making two years and a half, from the grant of administration, as the least time within which a creditor, by the greatest diligence, and under the most fortunate circumstances, can be in a situation to sue the heir or devisee. This is the result and effect of the statutory provisions, which repeal, by necessary implication, the common-law right of action against the heir, and is tantamount to an express statutory prohibition; and this period must, therefore, under the authorities above cited, be deducted in the computation of time, when the heir pleads the statute. In litigated cases, when either the creditor or the personal representative is met by difficulties, this period may be greatly extended, and the latter may be compelled, in order to protect himself from personal liability, to report the estate insolvent, when he does not believe it is, or to sell the lands under a power of sale, when he does not think the exercise of the power necessary. This complication can only be avoided by deducting from the statutory bar, when set up by the heir or devisee, the period of any honest litigation in their behalf by the personal representative, who is their trustee; and this is necessary for the protection of the credi-

[Scott v. Ware.]

tor, as well as of the trustee, heir, and devisee. In New York, heirs are exempt from suit by creditors, for three years after the qualification of the executor or administrator; and during this period, it is held, the statute does not run in favor of the heirs.—*Wood v. Wood*, 26 Barb. 356; *Van Wezel v. Wyckoff*, 3 Sandf. Ch. 528. It is a general rule, that although the statute may have commenced to run, yet, when a disability arises by mere operation of law, prohibiting a legal remedy, the running of the statute is necessarily suspended until the disability is removed.—*Moses v. Jones*, 2 N. & McC. 259; *Planters' Bank v. Bank of Alexandria*, 10 Gill & J. 346; *Dowdell v. Webber*, 2 Sm. & M. 452; *Posey & Coffee v. Decatur Bank*, 12 Ala. 802.

2. As to one-half of the realty—that is, the portions devised to R. Y. Ware and Mrs. A. A. Ware, the executor and the widow—the statute was waived by partial payments made by them on the complainant's debt before it was barred, and by their unconditional promise in writing to pay it. The bill shows that, in April, 1871, these two devisees induced the complainant to buy the debt from Pollard, and, as inducement thereto, gave him their two bills of exchange for the full amount of the debt, and as collateral thereto; that these bills were protested for non-payment, were still unpaid, and were tendered by the complainant for cancellation. At common law, a partial payment, before the bar was complete, obliterated the time past, and was evidence of a continuing contract.—*Taylor v. Perry*, 48 Ala. 247; *Turney v. Dodwell*, 3 E. & B. 136. This rule is not disturbed by the statute.— Code, § 3240. The delivery of a negotiable security, for and on account of a debt, is a partial payment under the statute, although such security turn out worthless.—*Smith v. Ryan*, 66 N. Y. 352; *Irving v. Veitch*, 3 Mees. & W. 90; *Turney v. Dodwell*, 3 E. & B. 136. As to these two devisees, then, the bar of the statute is effectually avoided. Their right to waive the statute, so far as their own rights are affected, is as clear as their right to waive any other personal defense; and any personal defense may be waived.—*Holman's Heirs v. Bank of Norfolk*, 12 Ala. 424; *Lowther v. Chappell*, 8 Ala. 353. The suit is, of course, on the original debt, and not on the collateral; and although the latter may be worthless, or may now be barred, that does not avoid its effect in removing the bar as to the original debt.

3. As against Robert Y. Ware individually, as one of the devisees, the judgment against him as executor is conclusive; and neither he, nor any one else for him, can afterwards set up the statute of limitations.—*Boykin v. Cook*, 61 Ala. 476.

4. As to the lands devised to Mrs. Molton, the complain-

[Scott v. Ware.]

ant held a mortgage executed by the testator, which he asked to have foreclosed ; and the statute of limitations was no bar to this feature of the bill.   If the foreclosure of the mortgage could not properly be asked under a creditor's bill, such as this, this would only make the bill multifarious, and there was no demurrer for multifariousness.   If such demurrer had been interposed,  and sustained, the complainant would have been allowed to amend by striking out the objection-able part.—*Marriott & Hardesty v. Givens*, 8 Ala. 694.   But such an objection could not have been sustained ; since it is well settled that a mortgagee may file a creditor's bill, and claim a preference as to the mortgaged property.—Story's Eq. Pl. §§ 101, 158 ; *Galveston R. R. v. Cowdrey*, 11 Wallace, 478 ; *Greenwood v. Frith*, 2 Hare, 241 ; 2 Y. & Coll. 405 ; 3 Y. & Coll. 597, 610; *Aldrich v. Westbrook*, 5 Beavan, 188.   This is the ordinary practice, and it would be strange if it were not allowed.   It avoids a multiplicity  of suits, and no one can be injured by it.   If a creditor  came in under such a bill, having a mortgage, or other separate security, he would be compelled to exhaust it before participating  with the general creditors ; and when he is the complainant in the bill, he should be allowed to obtain all necessary relief in one suit.   See, also, *Booth v. Stamper*, 10 Geo. 109 ; *Holman v. Bank of Norfolk*, 12 Ala. 409-10 ; *Clarkson v. DePeyster*, 3 Paige, 320 ; *Brown v. Bates*, 10 Ala. 432 ; Story's Equity, § 549, note 4.   That the mortgage was set up in an amended bill, is no objection to a foreclosure.   The amendment had relation to the filing of the original bill ; and it ought to have been allowed, under the statute (Code, § 3790), unless it was a radical departure from the original bill.—*King v. Avery*, 37 Ala. 169 ; *Blackwell v. Blackwell*, 33 Ala. 62.

BRAGG & THORINGTON, CLOPTON, HERBERT & CHAMBERS, and RICE & WILEY, *contra*.—1. The statute of limitations of six years is a complete defense to the bill as amended.—*Steele's Creditors v. Steele's Adm'r*, at the present term; *Gilpin v. Plummer*, 2 Cranch, C. C. 54 ; *King v. Avery*, 37 Ala. 169 ; *Lee v. Leachman*, 22 Ala. 452 ; *Ivey's Adm'r v. Owens*, 28 Ala. 641 ; *Manley v. Turnipseed*, 37 Ala. 531 ; Code, §§ 3240, 3243, 3247-8, 3250.   The statute itself specifies the exceptions to it, and the courts can not engraft other exceptions on it.

2. The appellant seeks to maintain his bill, by asking the foreclosure of a mortgage on the lands ; and yet argues that he was prohibited by law from filing his bill, for at least two years after the grant of administration.   The two positions are antagonistic, and destroy each other.   The administration of the estate did not prevent the filing of a bill to fore-

close the mortgage, nor is any other obstacle alleged ; and such a suit, if commenced, would have prevented the statute of limitations from running in favor of those devisees. If such a bill had been filed, then, at the instance of Molton and wife, by cross bill, the other devisees could have been brought in, and made to contribute to the payment of the debt ; and thus the statute would have been avoided as to all of them. Moreover, the other devisees might have been made defendants to such a bill, even without a cross bill, under an averment of a deficiency of personal assets and the insolvency of the executor.

3. The averment that some of the defendants "waived the statute of limitations," &c., does not set forth the facts constituting the waiver, nor state the facts necessary to show a valid waiver. It is averred, also, that the bills of exchange were given as "collateral" only, and as a "guaranty" of the original debt, which was a debt of Robert J. Ware, deceased, and not of the parties to the bills. This being the character of the bills, they were void under the statute of frauds.—Code, § 2121 ; *Rigby v. Norwood*, 34 Ala. 129 ; *McQuaid v. Powers*, 46 Ala. 45. Being void, they could not create or impose any legal liability, nor even be evidence of anything. It is not averred that they were given or received as a payment, but only as a "partial payment ;" while it is evident that, if a payment at all, they would have operated a total payment. The averment, too, that the bills were given as "collateral," and as a "guaranty" of the original debt, are inconsistent with the idea of a payment. These averments, it is submitted, are irreconcilably repugnant, and neither one is sufficient to remove or prevent the bar of the statute.—Authorities above cited ; Angell on Lim. § 272 ; *Thomason v. Cooper*, 57 Ala. 560.

4. The mortgage was an entirely new cause of action, and the amended bill setting it up was a radical departure from the original bill.—*Cain v. Gimon*, 36 Ala. 173 ; *Penn's Executor v. Spence*, 54 Ala. 35 ; Story's Eq. Pl. § 101, and authorities cited ; *Pitts v. Powledge*, 56 Ala. 147.

BRICKELL, C. J.—[After stating the facts as above]— Before a creditor can obtain the assistance of a court of equity, to subject lands descended, or lands devised, to the satisfaction of his demand, he must have established his debt by a judgment at law, and exhausted his legal remedies ; and there must be averment and proof of a want of personal assets, and of the insolvency of the personal representative, and the sureties on his bond, if any he has given.—*Darrington v. Borland*, 3 Port. 9 ; *Pike v. Searcy*, 4 Port. 52 ; *Ledyard v. Johnston*, 16 Ala. 548. A court of equity has not

[Scott v. Ware.]

original, inherent jurisdiction to decree a sale of lands descended—they were not assets at common law, and were liable to the payment of no other than debts due by specialty binding the heir. Nor had it jurisdiction to reach lands devised, unless they were charged by the testator with the payment of debts. The statutes charge the entire estate, real and personal, of a deceased person, saving the constitutional and statutory exemptions, with the payment of debts, making no distinction between them, except a requisition that the personal estate must be first applied. Nor is there any distinction made between debts, whether simple contract, specialty, or matter of record. A preference is to be observed in the order of payment, founded on the consideration, and not on the evidence of debt. Funeral expenses, expenses of last sickness, fees and expenses of administration, taxes on the estate, and wages of overseers for the year of the death of the intestate or testator, are entitled to payment in the order named. All other debts stand upon an equality, and the personal representative can make or give no preference between them; nor can a creditor, by any diligence on his part, acquire a preference or priority.

A creditor, therefore, proceeding in equity to subject lands descended or devised, must sue on behalf of himself and all other creditors. It seems to be a rule in the English Court of Chancery, that a single creditor may maintain a bill for the payment of his own debt, and seek a discovery of assets for that purpose only; the practice being, not to decree a general account, but an account of the personal estate, and of the particular debt, which is decreed to be paid in the due course of administration.—1 Story's Eq. § 546; 1 Dan. Ch. Pr. 236. But, if an administration of the real estate is sought, one creditor can not alone sue; he must sue on behalf of himself and all other creditors.—1 Dan. Ch. Pr. 236. The rule first stated can not be recognized here, where creditors all stand on an equality, and the one can not acquire a preference over others; the only legal right or equity which he can claim being participation in the assets, real and personal, in common with others. Its recognition would lead to a multiplicity of suits, and would embarrass administrations. For, if one creditor could maintain a suit of that kind, another could, and the suits might be as numerous as the creditors having claims of an amount within the jurisdiction of the court; costs would be unnecessarily and vexatiously increased, consuming the assets; while on one bill, to which all creditors may make themselves parties, and of which the court will take care that they have notice, a decree may be rendered enuring to the benefit of all, a general ac-

[Scott v. Ware.]

count taken, and the administration finally closed.—*Wilkins v. Finch*, 1 Phill. Eq. (N. C.) 355.

Whenever proceedings are instituted in the Court of Probate to sell, for the payment of debts, lands descended or devised, or in a court of equity to subject them, the heir or devisee may make any defense against the debts the intestate or testator could have made, if living, or which would be available to the personal representative, in an action at law against him; and there may be defenses on which they can rely, the personal representative has by his own acts or laches precluded himself from making.—*Peck v. Wheaton*, Mart. & Yerg. 353; *Woodfin v. Anderson*, 2 Tenn. Ch. 339; *Bond v. Smith*, 2 Ala. 660. Whatever would defeat or bar the debt, as a valid, subsisting, legal demand against the testator, or intestate, if he was living and defending, will bar and defeat it, when it is sought to charge the inheritance of the heir, or the estate of the devisee.—*Bond v. Smith, supra; Ferguson v. Smith*, 49 Miss. 500; *Yandell v. Pugh*, 53 Miss. 295; *Champion v. Cayse*, 54 Miss. 695.

There may be a judgment at law, establishing the demand against the personal representative, conclusive on him; but between him and the heir, or the devisee, no relation, no privity exists, which renders the judgment binding, or evidence against the latter, of any other fact than its rendition, of which it is evidence against all the world.—Freeman on Judgments, § 163; *Darrington v. Borland*, 3 Port. 38; *Teague v. Corbitt*, 57 Ala. 529. Such a judgment can not be evidence against the heir, or the devisee, for the simple reason, that he is not a party to it, has not been heard, and could not be heard to defend against it; nor could he prosecute an appeal for its reversal, if erroneous. If the situation of the parties was reversed—if the judgment had been obtained against the heir, or the devisee,—it would not be insisted for a moment that it was not without force as against the personal representative—that it did not, and could not, operate a deprivation of rights he had obtained by the grant of administration, or of letters testamentary, and under the will of the testator. Privity denotes mutual or successive relationship to the same rights of property, whether produced by operation of law, or by transfers or conveyances, the acts of parties. No right of property, no title to lands, vests in the personal representative. On the death of an intestate, *eo instanti*, they descend directly to the heir; or of a testator, they pass to the devisee; and from the intestate, the heir, or from the testator, the devisee, derives title, and between them a relation of privity exists; while they do not, and can not, take from or through the personal representa-

tative, with whom they have no connection and no relation.

A personal representative is not bound to plead the statute of limitations, in bar of an action against him, founded on the debt of the testator or intestate; and he may, as to himself, prevent the bar from attaching, or remove it after it has attached, by an express promise.—*Greening v. Brown*, Minor, 353; *Knight v. Godbolt*, 7 Ala. 304; *Hall v. Darrington*, 9 Ala. 502; *Towns v. Ferguson*, 20 Ala. 149; *Harwood v. Harper*, 54 Ala. 659. This doctrine may not be of general acceptance; but it is too firmly engrafted on the law of this State, by decisions to which reference is made, to be departed from without legislative interference. The acknowledgment or promise of the personal representative, or his failure to plead the statute in bar of an action against him, does not, however, prejudice the heir, or the devisee, nor will it charge real assets which have passed to him. It does not rest in the mere volition of the personal representative, whether the heir shall or shall not be charged with the debts of the ancestor, or the devisee with the debts of the testator; nor, as was said by this court in *Bond v. Smith*, supra, can he dictate the defense which the heir or devisee may make. Any defense the ancestor could have made, if living, and the suit was intended to charge him personally, the heir or devisee is free to make, unprejudiced by the acts, or the laches, of the personal representative.

A judgment rendered against the personal representative, founded on a debt barred by the statute of limitations when suit was commenced, is open to a plea of the statute by the heir, or the devisee, and the judgment does not prevent the successful interposition of the plea.—*Darrington v. Borland*, supra; *Teague v. Corbitt*, supra: *Woodfin v. Anderson*, supra; *Alston v. Mumford*, 1 Brock. 272; *Mooers v. White*, 6 Johns. Ch. 373. The statute must have perfected a bar, when the action against the personal representative is commenced; for that action, if the bar is not complete, stops the running of the statute; and if judgment is obtained, the original claim is merged; the judgment is a valid, subsisting claim, until it is barred.—*Yandell v. Pugh*, 53 Miss. 295. Creditors have the first right to all the estate, real or personal, not specially exempt. To their rights the estate of the heir or devisee is subordinate, so long as their demands are subsisting and unsatisfied. The personal representative stands in the place of the decedent, and against him only can actions be maintained, founded on claims against the intestate or testator. There is no room for the operation of the statute

[Scott v. Ware.]

of limitations, when, before the bar is complete, an action against the personal representative is commenced.

It is not shown by the bill when the suit was commenced against the executor, in which the judgment was rendered. There can be no presumption indulged, or intendment made, that it was commenced at any time anterior to the rendition of the judgment, or that the judgment was not by confession, without previous proceedings, if such presumption or intendment is necessary to avoid the operation of the statute of limitations. The judgment, of itself, does not import, as against strangers to it, an indebtedness existing prior to its rendition.—*Troy v. Smith,* 33 Ala. 469; *Dubose v. Young,* 14 Ala. 139; *Snodgrass v. Br. Bank Decatur,* 25 Ala. 161; *Jacobson v. Sims,* 60 Ala. 191. All parties are presumed to state, in pleading, all facts material to their rights; and on demurrer, facts not stated, are presumed not to exist.

When the judgment was rendered, the statute of limitations of six years had barred an action at law on the note on which it is founded. Though secured by the mortgage, which was under seal, the note was the principal, the mortgage but an incident; and the character of the note, as a mere simple contract, subject to the bar of the statute of six years, was unchanged.—Ang. on Lim. § 92; *Jackson v. Sackett,* 7 Wend. 94. A mortgagee has several distinct remedies, which he may pursue, when there is default in the payment of the mortgage debt; and there are defenses peculiar to each of these remedies. An action at law will lie on the debt; but it is subject to defenses to which any similar action would be subject on a debt of like character; and that it is secured and recognized by the mortgage, a sealed instrument, will not relieve it from such defenses. Ejectment for the recovery of the mortgaged premises can be supported, and is subject to the defenses peculiar to that action; and a bill in equity to foreclose may be maintained. The statute of limitations may operate a bar to the action on the debt, or to the action of ejectment; while the lapse of twenty years from the law day, without recognition or admission of the existence of the debt, creating the presumption of payment, will alone bar the right of foreclosure.—*Duval v. McLoskey,* 1 Ala. 708; *Inge v. Boardman,* 2 Ala. 331; *Cullom v. Branch Bank Mobile,* 23 Ala. 797.

A partial payment, before the bar of the statute is complete, or an unconditional promise in writing, signed by the party to be charged thereby, alone prevents the operation of the statute—no other act, promise, or acknowledgment is sufficient, in this State.—Code of 1876, § 3240. The partial payment is a satisfaction, an extinguishment, *pro tanto,* of

the debt; to its extent, the obligation of the contract is per-- formed and discharged—it is the remainder of the debt only, which is withdrawn from the past operation of the statute. True, the bill avers the bills of exchange, drawn by Robert Y. Ware, were a *partial payment* of the debt; but yet it also avers they were for the *full amount of the debt unpaid.* The amendment proposed, if allowed by the chancellor, would not have varied these averments; and taking them as true, the bills were, if a payment at all, a payment in full, and not a *partial payment.* They are equal in amount to the entire debt; and there is no averment that they were accepted as payment of a specific part, and not of the whole debt. Denominating them as a *partial payment,* and yet affording no means of showing what part of the original debt was paid, and what part was withdrawn from the past operation of the statute, can not convert them into a *partial payment,* which the statute contemplates to remove its bar.

The chancellor did not err in declining to retain the bill, and proceed to a decree of foreclosure of the mortgage on the second amended bill. As we have said, the original bill was properly filed, and could have been filed by the appellant, only on behalf of himself and all other creditors of the testator. It was not filed to enforce a separate, individual right of the appellant, but a right he had in common with others. If the amendment was allowed to convert the suit into one for a foreclosure of the mortgage, it is obvious there would be a change of the right in which the appellant sued originally, of the purpose of the suit, and of the relief which could be granted. Amendments to original bills can not be allowed, and made the basis of relief, which change the entire character of the suit, and the character in which the complainant originally sues.

Let the decree be affirmed.